Rita D. THOMPSON, Appellant–
Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 49A04–0205–CR–215.

Court of Appeals of Indiana.

Jan. 30, 2003.

Timothy J. O'Connor, O'Connor & Auersch, Indianapolis, IN, Attorney for Appellant.

Steve Carter, Attorney General of Indiana, Cynthia L. Ploughe, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

BAKER, Judge.

Appellant-defendant Rita D. Thompson appeals her conviction for Residential Entry,[1] a class D felony. Specifically, Thompson claims that her conviction may not stand because the State presented no evidence that she was sane during the commission of her crime. Concluding that that the evidence presented to the trial court showed without conflict that Thompson could not appreciate the wrongfulness of her actions at the time she committed the crime, we reverse.

### FACTS

The facts most favorable to the judgment are that on February 12, 2001, Thompson went to the home of Alisha Beeler to use Beeler's bath. Beeler—who knew that Thompson was mentally ill—let Thompson in but later became alarmed when Thompson "began to talk strangely" to the children in the house. Appellant's App. p. 17. Thompson briefly went to her car to retrieve some bath items. At this point, Beeler locked the door to prevent Thompson from returning. When Thompson attempted to enter Beeler's home, Beeler informed her that she was no longer welcome. Thompson became irate, yelling and kicking the door. Thompson then kicked at a front window until the window broke, whereupon Thompson entered the house. After yelling ensued between Beeler and Thompson, Thompson retrieved some personal items and left.

As Thompson was driving away from Beeler's home, Officer Brady Ball of the Indianapolis Police Department arrived. Other officers stopped Thompson's vehicle and, after obtaining general information, allowed her to leave. Beeler related the events that had occurred to Officer Ball, who later obtained Thompson's address from the officers that had briefly detained her. Officer Ball proceeded to Thompson's residence, where she was arrested. On February 13, 2001, the State charged Thompson with residential entry in the Marion Superior Court, Criminal Division, Room Nine. An initial hearing was held the same day, whereupon Thompson was released on bail.

In a separate incident, on February 14, 2001, Thompson was arrested for charging at a friend with a knife. On February 23, 2001, the State charged Thompson with attempted battery and criminal recklessness in the Marion Superior Court, Criminal Division, Room Five. Judge Grant Hawkins appointed two psychiatrists to evaluate Thompson's competency to stand trial. Drs. Dwight Schuster and Ned Masbaum found that Thompson, though competent to stand trial, was not able to understand the wrongfulness of her actions on February 14, 2001, due to mental illness. Appellant's App. p. 50, 57.

On December 20, 2001, Thompson waived her right to trial by jury in her residential entry case. Thompson and the State stipulated to the facts stated in the probable cause affidavit, records in Thompson's probate court file, and Drs. Masbaum and Schuster's reports regarding the February 14, 2001 incident. Both parties agreed that the evidence they stipulated to would constitute the only evidence submitted to the trial court regarding the February 12, 2001 incident.

On March 11, 2002, the trial court found Thompson guilty but mentally ill and sentenced Thompson to three years in the Department of Correction. She now appeals.

---

1. Ind.Code § 35–43–2–1.5.

## DISCUSSION AND DECISION

■ Thompson argues that her conviction may not stand because the State presented no evidence demonstrating that she was sane at the time of the crime. Specifically, Thompson notes that while both expert witnesses stated in their medical evaluations that she was mentally ill on February 14, 2001, the State presented no evidence of her mental state.

We first note that Thompson admitted to kicking in Beeler's window and entering Beeler's home. Thompson's defense theory was that she was insane at the time of the offense, thereby vitiating her culpability. For her insanity defense to succeed, Thompson had to prove by a preponderance of the evidence that "as a result of mental disease or defect, [s]he was unable to appreciate the wrongfulness of the conduct at the time of the offense." Ind.Code § 35–41–3–6(a); *Robinette v. State,* 741 N.E.2d 1162, 1167 (Ind.2001).

■ In addressing Thompson's claim that the evidence was insufficient to support her conviction, we will not reweigh the evidence. *Brasher v. State,* 746 N.E.2d 71, 72 (Ind.2001). Rather, we look to the evidence most favorable to the judgment and the reasonable inferences therefrom. *Id.* A defendant who appeals a judgment rejecting the defense of insanity must demonstrate that "the evidence was without conflict and led only to the conclusion that the defendant was insane when the crime was committed." *Robinette,* 741 N.E.2d at 1167. Furthermore, a fact-finder may discount the testimony of experts in determining whether the defendant was insane at the time of the crime and rely on the testimony of lay witnesses. *Id.* Lay witness testimony regarding a defendant's normal demeanor before and after a crime is sufficient evidence to secure a conviction. *Barany v. State,* 658 N.E.2d 60, 64 (Ind.1995).

In this case, the medical experts unequivocally stated that Thompson could not appreciate the wrongfulness of her conduct on February 14, 2001. Dr. Schuster's medical opinion was that Thompson "was of unsound mind, in the legal sense of that term, on or about February 14, 2001, in that she was suffering from a mental illness which impaired her appreciation of the wrongfulness of her conduct." Appellant's App. p. 50. Dr. Masbaum's opinion was that "due to her severe mental disease, [Thompson] was of unsound mind at the time of the alleged offenses. She was not able to appreciate the wrongfulness of her conduct at that time in accordance with I.C. 35–41–3–6." Appellant's App. p. 57.

■ While the medical reports specifically single out the February 14, 2001 incident, the stipulation entered into by Thompson and the State make them equally applicable to the February 12, 2001 incident. The State waived any objection to the admissibility of the medical reports, including relevancy concerns, when it agreed to stipulate to the admissibility of those evaluations. *Wireman v. Fairchild,* 450 N.E.2d 1011, 1012 (Ind.Ct.App.1983) (holding that parties are bound by stipulations they enter into). The court approved the admissibility of the reports in its December 20, 2001 order. Appellant's App. p. 59.

The State presented no evidence in rebuttal to the medical reports to show that Thompson was sane at the time she committed residential entry on February 12, 2001. No expert opinion supporting the State's position that Thompson could appreciate the wrongfulness of her acts was presented. Furthermore, the State presented no lay witness evidence of Thompson's state of mind or demeanor. In short, "the evidence [is] without conflict and

[leads] only to the conclusion that [Thompson] was insane when the crime was committed." *Robinette,* 741 N.E.2d at 1167.

The State argues that "non-medical evidence of [Thompson's] sanity can be gleaned from the affidavit." Appellee's Br. p. 5. Specifically, the State notes that Thompson took her belongings with her as she left Beeler's home. This, according to the State, indicates an "awareness of the propriety of taking only what belonged to her" and Thompson's "awareness of right and wrong." Appellee's Br. p. 5. The State also observes that the officers who obtained Thompson's general information after stopping her vehicle "felt comfortable releasing her," thus leading to the conclusion "that she was sufficiently lucid to be allowed to go about her business." Appellee's Br. p. 5.

■ Even though our supreme court has held that a defendant's actions after a crime may demonstrate knowledge of guilt, the State's observations do not establish that Thompson was of sound mind at the time she committed residential entry. *Baird v. State,* 604 N.E.2d 1170, 1177 (Ind.1992) (holding that evidence that defendant lied to wife's parents about her whereabouts after killing his wife showed an awareness of right and wrong). That Thompson carried away her own belongings does nothing to indicate that she knew that taking another's property was wrong. It may be possible that Thompson took only her belongings because she knew that taking Beeler's property would be wrong. However, in reviewing the judgment, we only review the "reasonable inferences" to be drawn from the facts. *Brasher,* 746 N.E.2d at 72. A more reasonable inference is that Thompson instinctively retrieved her own items as she left.

The fact that Thompson was allowed to drive away by police officers bears little relevance to whether Thompson could not appreciate right from wrong at the time of her crime. The officers' testimony was not presented, and drawing a conclusion as to their opinions with respect to Thompson's demeanor would be speculative.

Because the uncontradicted evidence presented to the trial court showed that Thompson could not appreciate the wrongfulness of her actions at the time she committed the crime, the trial court erred in finding her guilty but mentally ill.

Reversed.

RILEY, J., and MATHIAS, J., concur.