**Rita D. THOMPSON, Appellant (Defendant below),**

v.

**STATE of Indiana, Appellees (Plaintiff below).**

No. 49S04–0305–CR–209.

Supreme Court of Indiana.

March 23, 2004.

Timothy J. O'Connor, Indianapolis, IN, Attorneys for Appellant.

Steve Carter, Attorney General, Cynthia Ploughe, Deputy Attorney General, Office of the Attorney General, Indianapolis, IN, Attorneys for Appellee.

SHEPARD, Chief Justice.

Rita Thompson was convicted of residential entry. She admits committing the crime but argues that she presented uncontroverted expert evidence that she was legally insane at the time and therefore should have been found not guilty by reason of insanity. We conclude that, as with other evidence presented by either the State or the defense, a finder of fact is entitled to decide whether to credit the opinions of experts on insanity. Accordingly, we affirm the conviction.

### Facts

Thompson does have a history of mental illness, a fact that manifested itself on February 12, 2001, when she went to the home of family friend Alisha Beeler to use the bath. After some time in the house, Thompson began to talk strangely to the

children. Beeler knew Thompson was mentally ill, and when Thompson later went to her car for some bath items, Beeler locked the door behind her. When Thompson came back to the door, Beeler told her to leave. Thompson became irate and began kicking the door and then the window. The window broke, and Thompson entered the house by climbing through it. Thompson and Beeler exchanged words, then Thompson collected her things and departed through the front door.

When police arrived at the scene, Thompson was driving away in her own vehicle. Officers stopped her and obtained her general information but then released her as only a suspect. Meanwhile, another officer interviewed Beeler and learned the foregoing facts. Thompson then telephoned Beeler several times, threatening to "shoot up" Beeler and her house. Thompson was taken into custody at her home about an hour and a half after the initial incident.

The State charged Thompson with residential entry, a class D felony, Ind.Code Ann. § 35–43–2–1.5 (West 1998). She was released on bond and subsequently committed acts on February 14 that led to her being charged with one count of battery, a class C felony, and three counts of criminal recklessness, class D felonies. These charges were tried in a separate case docketed in a different courtroom.

In this case, Thompson pled not guilty by reason of insanity and waived her right to a jury trial. The parties submitted the matter to the trial judge on the basis of stipulated evidence. The evidence included (1) a stipulation to the truth of the facts as stated in the probable cause affidavit, including that Thompson committed the charged acts, (2) the reports of the court-appointed psychiatrists that were prepared for the trial resulting from Thompson's acts on February 14, and (3) documents

from previous emergency detention and commitment proceedings unrelated to these events.

The court found Thompson guilty but mentally ill and sentenced her to the maximum three years. Thompson appealed the trial court's rejection of her insanity defense, and the Court of Appeals reversed. It held that in the absence of evidence to contradict Thompson's expert testimony, she was entitled to an acquittal. *Thompson v. State,* 782 N.E.2d 451 (Ind.Ct.App. 2003). We granted transfer.

### Proof of Insanity

■ Because Thompson admits to committing the alleged offense, the only issue before us is whether the record supported the trial court's finding that Thompson was guilty but mentally ill rather than not guilty by reason of insanity.

Pursuant to Indiana Code Annotated § 35–41–3–6 (West 1998), "A person is not responsible for having engaged in prohibited conduct if, as a result of mental disease or defect, he was unable to appreciate the wrongfulness of the conduct at the time of the offense." The section defines "mental disease or defect" as "a severely abnormal mental condition that grossly and demonstrably impairs a person's perception, but the term does not include an abnormality manifested only by repeated unlawful or antisocial conduct." Ind.Code Ann. § 35–41–3–6(b).

The "insanity defense" is an affirmative defense for which the burden of proof is on the defendant. The State must prove the offense, including *mens rea,* beyond a reasonable doubt but need not disprove insanity. Ind.Code Ann. § 35–41–4–1 (West 1998). "This Court has held that although the State is required to prove the defendant committed the act 'knowingly' this is not tantamount to requiring the State to prove that the defendant was 'sane.'"

*Lyon v. State*, 608 N.E.2d 1368, 1370 (Ind. 1993). As we said more recently:

> [A]lthough [the defendant] offered evidence of mental illness, the State has no obligation to offer evidence which disproves mental illness in order to meet its burden of proving [the defendant] guilty beyond a reasonable doubt. To require the State to disprove mental illness would shift the burden of proof of insanity, controverting the General Assembly's placement of that burden on the defendant.

*Garner v. State*, 704 N.E.2d 1011, 1013–14 (Ind.1998) (citations omitted). To avoid responsibility for the crime proven by the State, the defendant must establish the defense by a preponderance of the evidence. Ind.Code Ann. § 35–41–4–1(b).

■ Whether or not a defendant can appreciate the wrongfulness of his conduct is a question for the trier of fact. A convicted defendant who claims his insanity defense should have prevailed at trial is in the position of one appealing from a negative judgment, and we will reverse only when the evidence is without conflict and leads only to the conclusion that the defendant was insane when the crime was committed. *Robinette v. State*, 741 N.E.2d 1162 (Ind.2001); *Rogers v. State*, 514 N.E.2d 1259 (Ind.1987). We will not reweigh the evidence or assess the credibility of witnesses but will consider only the evidence most favorable to the judgment and the reasonable and logical inferences to be drawn therefrom. *Metzler v. State*, 540 N.E.2d 606 (Ind.1989).

Although expert "opinions provide a strong justification for raising the insanity defense, we have never held expert testimony to be conclusive." *Cate v. State*, 644 N.E.2d 546, 547 (Ind.1994). Cases like Thompson's have often turned on the proposition that the trier of fact is free to disregard the testimony of experts and rely upon the testimony of lay witnesses. *Garner*, 704 N.E.2d at 1014; *Barany v. State*, 658 N.E.2d 60, 63–64 (Ind.1995); *Rogers*, 514 N.E.2d at 1261. Indeed, we have noted that testimony regarding behavior before, during, and after a crime may be more indicative of actual mental health at time of the crime than mental exams conducted weeks or months later. *Barany*, 658 N.E.2d at 64.

■ Conflicting lay testimony is not required, however, for the trier of fact to reject expert testimony. As a general rule, factfinders are not required to believe a witness's testimony even when it is uncontradicted. If judges and juries can disbelieve uncontradicted testimony about facts, they are surely entitled to decide whether to accept or reject testimony that represents a witness's opinion. The psychiatrists' reports in this case merely offer their opinions about Thompson's state of mind two days after she committed the crime at issue. As it happens, the trial judge to whom these opinions and the remainder of the evidence were submitted is among the most knowledgeable of Indiana's judicial officers on mental health matters. He was not persuaded, and we can think of little reason to second-guess that judgment.

The State contends that "non-medical evidence of [Thompson's] sanity" could be "gleaned from the affidavit." (Appellee's Br. 5.) Specifically, it cites Thompson's removal of only her own possessions from Beeler's home as indicating her "awareness of the propriety of taking only what belonged to her" and hence her "awareness of right and wrong." *Id.* It further argues that because the officers who stopped Thompson when she was leaving the scene "felt comfortable releasing her," they must have felt "she was sufficiently lucid to be allowed to go about her business." *Id.* The Court of Appeals rejected

the State's argument, correctly stating that "in reviewing the judgment, we review only the 'reasonable inferences' to be drawn from the facts" and finding that there were other "more reasonable" inferences that could be drawn from those facts. *Thompson*, 782 N.E.2d at 454 (citation omitted).

The question, however, is whether the inferences supporting the judgment were reasonable, not whether there were other "more reasonable" inferences that could have been made. "Reaching alternative inferences such as this is a function of the trier of fact, not this Court. We cannot reverse the conviction merely because this inference is a plausible one that might have been drawn from the evidence." *Askew v. State*, 439 N.E.2d 1350, 1352 (Ind. 1982). As we said in *Metzler v. State*:

> Triers of fact determine not only the facts presented to them and their credibility, but any reasonable inferences from facts established either by direct or circumstantial evidence. It is not necessary that the court find the circumstantial evidence excludes every reasonable hypothesis of innocence. It need only be demonstrated that inferences may reasonably be drawn which support the finding of guilt.

540 N.E.2d at 610 (citations omitted).

In *Cate*, we upheld the jury's determination that the defendant was not legally insane despite unanimous expert testimony to the contrary, saying that the evidence was not uncontroverted because the defendant's lucidity after his arrest, conflicting claims about his motivation, and an incentive to lie provided "at least the minimal evidentiary justification [necessary] for the jury to find him sane enough to be held legally accountable for his actions." 644 N.E.2d at 548. Similarly, in this case two experts submitted reports indicating that they believed that, due to her mental ill-

ness, Thompson could not appreciate the wrongfulness of her actions when she kicked in Beeler's window and entered the house. The trial judge was not persuaded by these opinions, however, in light of the rest of the record. When Thompson was released from the hospital on February 9, only days before the incident, she had no active psychotic symptoms, no homicidal or suicidal ideations, and was calm and pleasant without agitation. (Tr. at 12).

The trier of fact was entitled to prefer this evidence to psychiatric examinations conducted weeks or months later. In the course of the sentencing hearing, the judge provided some insight into why he did so. He cited Thompson's history of avoiding criminal responsibility through her illness, her conflicting stories about what happened to her medication, her decision to use illegal drugs and drink alcohol while on her medication, and lies she told one of the examining psychiatrists regarding that use of drugs and alcohol. The judge had concluded that she knew her actions were wrong but was using her illness to manipulate the system. (Tr. at 39–44).

"The evidence on the issue of insanity clearly was in conflict and did not lead inexorably to a single conclusion." *Rogers*, 514 N.E.2d at 1261. We find that based on the evidence presented, the trier of fact could have found that Thompson was mentally ill but able to distinguish right from wrong.

### Conclusion

We affirm the trial court.

DICKSON, BOEHM, and RUCKER, JJ., concur.

SULLIVAN, J., concurs with separate opinion.

SULLIVAN, Justice, concurring.

This case has some history that I think is worth reciting. As the majority opinion says, the expert opinions in this case were unanimous that Rita Thompson was insane when she committed the crimes at issue here.[1] The Court of Appeals found this evidence "uncontradicted" and reversed her conviction. 782 N.E.2d 451 (Ind.Ct. App.2003).

On the same day that the Court of Appeals decided Thompson's appeal, the same panel of the Court of Appeals also rendered an opinion in the case of Michael L. Moler, *Moler v. State*, 782 N.E.2d 454 (Ind.Ct.App.2003), *trans. denied* 792 N.E.2d 43 (Ind.2003). As in *Thompson*, the expert opinions in Moler's case were unanimous that he was insane when he committed the crimes at issue. However, there was also lay evidence in *Moler* that contradicted the experts' opinions. The Court of Appeals reluctantly rejected Moler's claim that because the experts' opinions that he was insane were uncontradicted, there was insufficient evidence to convict him. I say reluctantly because the Court of Appeals said in *Moler*:

> *Barany* [*v. State*, 658 N.E.2d 60 (Ind. 1995)], has made it very difficult even for defendants with well-documented mental illnesses to successfully raise the insanity defense. Under the rule of *Barany*, even if all expert testimony regarding a defendant's state of mind points to the fact that the defendant could not have appreciated the wrongfulness of his actions at the time of a crime, the jury is free to disregard the experts' opinions in favor of lay evidence of the defendant's demeanor before and after the crime.

782 N.E.2d at 454. *Barany* was still another case where the expert opinions were unanimous that Barany was insane when he committed the crimes at issue. But like *Moler*, there was lay evidence that contradicted the experts' opinions. Based on all the evidence presented, Justice De-Bruler's opinion said:

> The jury could have decided that this testimony about appellant's behavior was more indicative of his actual mental health at the time of the killing than medical examinations conducted four weeks after the arrest. Given this conflicting evidence, we will not invade the jury's fact-finding province.

658 N.E.2d at 64.

It is probably not coincidence that the same panel of the Court of Appeals decided two cases involving exactly the same issues on exactly the same day, one in favor of the State and the other in favor of the defendant. The Court of Appeals likely expected petitions to transfer with respect to both cases to reach our Court at the same time. However, *Moler* reached our court and we disposed of it (denying Moler's petition to transfer by vote of 3–2) prior to receiving the petition to transfer in *Thompson*. At such, we did not consider them together.

*Moler*, of course, constituted a direct request by the Court of Appeals for us to constrict the rule of *Barany*. Because a vote to deny a petition for transfer does not constitute a vote on the merits, that issue remained open even after Moler's petition to transfer was denied. But today we unambiguously reaffirm the rule of *Barany*.

---

1. The majority says that the "psychiatrists' reports in this case merely offer their opinions about Thompson's state of mind two days after she committed the crime at issue." The Court of Appeals held that the state had stipulated that the reports were "equally applicable" to the date of the crime.

There may be a temptation to read into today's opinion—because we reverse the decision of the Court of Appeals—a suggestion that *Barany* has been expanded and that psychiatric testimony is even less weighty than before. I do not believe that to be the Court's intent. It seems to me that the law would require us, even under today's opinion, to set aside a conviction where (1) there was unanimous credible, expert testimony that a defendant was insane at the time of the crime at issue and (2) there was no other evidence of probative value from which a conflicting inference could be drawn. Said differently, there will be insufficient evidence to convict where (1) there is unanimous credible, expert testimony that a defendant is insane at the time of the crime at issue and (2) there is no other evidence of probative value from which a conflicting inference can be drawn. But we find that there was such evidence here.