Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.

ATTORNEY FOR APPELLANT:

**DARREN BEDWELL**
Marion County Public Defender Agency
Appellate Division
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**IAN McLEAN**
Deputy Attorney General
Indianapolis, Indiana

FILED
Jun 14 2013, 8:28 am

CLERK
of the supreme court,
court of appeals and
tax court

# IN THE
# COURT OF APPEALS OF INDIANA

SERAFIN SANCHEZ,                    )
                                    )
    Appellant-Defendant,            )
                                    )
       vs.                         )    No. 49A04-1206-CR-318
                                    )
STATE OF INDIANA,                   )
                                    )
    Appellee-Plaintiff.             )

APPEAL FROM THE MARION SUPERIOR COURT
The Honorable Carol J. Orbison, Judge
Cause No. 49G22-1005-MR-37095

**June 14, 2013**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**CRONE, Judge**

**Case Summary**

The State charged Serafin Sanchez with two counts of murder and one count of class A misdemeanor carrying a handgun without a license. Sanchez asserted an insanity defense. A jury found him guilty as charged. On appeal, Sanchez contends that the jury instructions regarding the State's burden of proof as to the offenses and his burden of proof as to his insanity defense constitute fundamental error. We find no error and therefore affirm his convictions.

**Facts and Procedural History**

Sanchez lived in half of a double on North Holmes Avenue in Indianapolis. On May 9, 2010, Sanchez had been using methamphetamine for four days straight and also had consumed alcohol. At approximately 9:00 that morning, he was smoking meth in his home with Luis Aguilar, who lived down the street. According to Sanchez, Aguilar said that he had tortured Sanchez's brother in Sanchez's neighbors' home the night before. Aguilar also said that the neighbors were currently torturing Sanchez's mother and brother and asked if Sanchez could hear them screaming. Sanchez grabbed a shotgun and shot and kicked at his neighbors' front door to gain entry. He then used an assault rifle to riddle his neighbors' ground floor with bullets, screaming, "Hey. Where's my family? Y'all killed my family." State's Ex. 246 at 7. Sanchez returned to his residence and confronted Aguilar, who denied harming Sanchez's family. Sanchez shot Aguilar in the leg, and the two struggled for the weapon. Aguilar ran outside and down the street toward his house. Sanchez gave chase and fired multiple bullets from multiple firearms at Aguilar, who collapsed and died after being shot seven times. A nearby resident saw the killing and called 911.

Sanchez returned to his home, grabbed additional firearms, and went outside. When police officers arrived in response to the 911 call, Sanchez yelled that his family had been murdered and that he needed the officers' help. Sanchez ran inside his neighbors' home, went upstairs, and shot Florindo Juarez ten times.[1] Sanchez yelled, "I'm going to kill you mother-f*cker. You killed my family." Tr. at 162. Police officers ordered Sanchez to drop his weapon, handcuffed him, and led him downstairs. Sanchez told the officers that his family had been murdered in the basement. No victims were found in the basement, but three of Juarez's relatives had hidden there during Sanchez's shooting spree. Juarez later died from his wounds. Sanchez confessed to the killings and admitted to using meth.

The State charged Sanchez with two counts of murder, which is the knowing or intentional killing of another human being, Ind. Code § 35-42-1-1, and one count of class A misdemeanor carrying a handgun without a license. Sanchez filed notice of his intent to assert an insanity defense. The trial court appointed a psychiatrist and a psychologist to determine whether Sanchez had been insane at the time of the killings, i.e., whether he had been unable to appreciate the wrongfulness of his conduct as a result of mental disease or defect, and therefore was not legally responsible. Ind. Code § 35-41-3-6. Both experts interviewed Sanchez and determined that he had not been insane and that his mental state had been a result of voluntary intoxication from meth use, which is not a valid defense to murder. Ind. Code §§ 35-41-2-5, 35-41-3-5. The court later appointed the same two experts to

---

[1] Juarez is referred to as "Florido Sail" in the charging information and as "Florindo Eliazar Bail Juarez" in the final jury instructions. Appellant's App. at 37, 159.

determine whether Sanchez was competent to stand trial. The experts interviewed Sanchez again and determined that he was competent to stand trial and that he was malingering, or faking symptoms of mental illness. At trial, Sanchez offered the testimony of another psychiatrist, who opined that Sanchez suffered from paranoid schizophrenia at the time of the shootings and thus was unable to appreciate the wrongfulness of his conduct as a result of mental disease or defect. The jury was instructed on the affirmative defense of insanity and was also given the option of finding Sanchez guilty but mentally ill, but it ultimately found him guilty as charged. This appeal ensued.

## Discussion and Decision

The State has the burden of proving all elements of a charged crime beyond a reasonable doubt. *Cruz v. State*, 980 N.E.2d 915, 918 (Ind. Ct. App. 2012). "The insanity defense is an affirmative defense for which the defendant carries the burden of proof by a preponderance of the evidence." *Carson v. State*, 963 N.E.2d 670, 676 (Ind. Ct. App. 2012) (citing Ind. Code § 35-41-4-1), *trans. denied*. The State need not disprove insanity. *Thompson v. State*, 804 N.E.2d 1146, 1148 (Ind. 2004).

Sanchez contends that the trial court erred in instructing the jury on the parties' respective burdens of proof. Because Sanchez did not object to the instructions at trial, he must establish fundamental error.

> The fundamental error doctrine provides a vehicle for the review of error not properly preserved for appeal. In order to be considered fundamental, the error must represent a blatant violation of basic principles rendering the trial unfair to the defendant and thereby depriving the defendant of fundamental due process. The error must be so prejudicial to the defendant's rights as to make a fair trial impossible. In considering whether a claimed error denied the

4

defendant a fair trial, we determine whether the resulting harm or potential for harm is substantial. Harm is not shown by the fact that the defendant was ultimately convicted; instead, harm is determined by whether the defendant's right to a fair trial was detrimentally affected by the denial of procedural opportunities for the ascertainment of truth to which he would have been entitled.

*Quiroz v. State*, 963 N.E.2d 37, 42 (Ind. Ct. App. 2012) (citations omitted), *trans. denied*.

Specifically, Sanchez takes issue with preliminary instructions 5 and 7A. Preliminary instruction 5 reads as follows:

The defendant has entered a plea of not guilty by reason of insanity to this information, and upon the issues thus joined, the burden rests upon the state of Indiana to prove to each juror every material allegation of the information beyond a reasonable doubt. The information that has been filed against the defendant, or the fact that the defendant may have been arrested or held on a charge, is not to be considered as any evidence of guilt herein. It is merely the formal statutory manner of presenting the charge that must be proven by the evidence during the trial.

Since the defendant is presumed to be innocent, he is not required to present any evidence to prove his innocence. However, if you were to find that the defendant committed the crime charged, then the burden would be upon him to prove, by a preponderance of the evidence, that he was insane at the time the crime was committed.

Preponderance of the evidence, as it applies to the issue of insanity, means that you must be convinced from a consideration of all the evidence in the case that the defendant was more probably insane than sane at the time that he committed the offense.

The definitions and essential elements of the crime charged in the information will be given in other instructions. The proof of the commission of a crime is not complete unless each element thereof is proven, and the doctrine of reasonable doubt applies to each element.

Appellant's App. at 140. Preliminary instruction 7A reads as follows:

The State has the burden of proving the defendant guilty beyond a reasonable doubt. Some of you may have served as jurors in civil cases, where

5

you were told that it is only necessary to prove that a fact is more likely true than not true.  In criminal cases, the State's proof must be more powerful than that.  It must be beyond a reasonable doubt.

A reasonable doubt is a fair, actual and logical doubt.  It may arise from the evidence, from a lack of evidence, or from a conflict in the evidence.  It should be a doubt based upon reason and common sense and should not be a doubt based upon imagination or speculation.

Proof beyond a reasonable doubt is proof that leaves you firmly convinced of the defendant's guilt.  There are very few things in this world that we know with absolute certainty, and in criminal cases the law does not require proof that overcomes every possible doubt.  If, based on your consideration of the evidence, you are firmly convinced that the defendant is guilty of the crime charged, you may find him guilty.  If on the other hand, you think there is a real possibility that he is not guilty, you should give him the benefit of the doubt and find him not guilty.

If you are firmly convinced that the defendant has committed the crime charged, you should then consider the issue of insanity.  *If you are convinced from all of the evidence in the case that the defendant was more probably sane than insane at the time of the offense, then you will have reached that degree of certainty that authorizes conviction.*  If you are convinced from all the evidence in the case that the defendant was more probably insane than sane at the time of the offense, then you should find the defendant not responsible by reason of insanity.

*Id*. at 142 (emphasis added).

Sanchez's only quibble with instruction 5 appears to be its use of the word "convinced" in defining the preponderance of the evidence standard, since that word is also used in defining the reasonable doubt standard in instruction 7A.  Sanchez cites no authority

for the proposition that this constitutes error, let alone fundamental error, and therefore this argument is waived. *Mallory v. State*, 954 N.E.2d 933, 936 (Ind. Ct. App. 2011).[2]

The gist of Sanchez's argument regarding instruction 7A appears to be that the italicized portion improperly informed the jury that the State could carry its burden with a preponderance of the evidence. We disagree. Instruction 7A, when read together with instruction 5, correctly indicates that the preponderance standard applies only to the issue of insanity. Having found no error, fundamental or otherwise, we affirm Sanchez's convictions. *See Wooden v. State*, 757 N.E.2d 212, 214 (Ind. Ct. App. 2001) ("Jury instructions must be considered as a whole; if they state the law fully and correctly when read in conjunction with one another, they are not erroneous."), *trans. denied* (2002).

Affirmed.

FRIEDLANDER, J., concurs.

ROBB, C.J., dissents with opinion.

---

[2] Sanchez says that "[a]t least one court has criticized the use of the term 'firmly convinced' to define the concept of 'beyond a reasonable doubt,' stating 'in our view, it is possible to be firmly convinced of a fact, yet still retain a reasonable doubt.'" Appellant's Br. at 15 (quoting *State v. Perez*, 976 P.2d 427, 442 (Haw. Ct. App. 1998)). The Indiana Supreme Court acknowledged *Perez* in *Williams v. State*, 724 N.E.2d 1093, 1096 n.2 (Ind. 2000), yet declined to follow suit, and we reject Sanchez's invitation to second-guess our supreme court. We note that Sanchez confessed to killing Aguilar and Juarez, and the independent evidence that he did so was overwhelming; the only contested issue at trial was whether he was insane at the time of the killings.

# IN THE
# COURT OF APPEALS OF INDIANA

SERAFIN SANCHEZ,         )
         )
   Appellant-Defendant,     )
         )
       vs.       )    No. 49A04-1206-CR-318
         )
STATE OF INDIANA,       )
         )
   Appellee-Plaintiff.      )

**ROBB, Chief Judge, dissenting**

Because I believe that the effect of Instruction 7A was to heighten the burden of proof for the insanity defense from a preponderance of the evidence to beyond a reasonable doubt, I respectfully dissent.

Neither of the instructions at issue are an Indiana pattern instruction (or combination of pattern instructions). Instruction 7A properly informed the jury that the State's burden was beyond a reasonable doubt, defining reasonable doubt as "proof that leaves you firmly convinced of the defendant's guilt." Appellant's Appendix at 142. However, it then turned to a discussion of insanity, instructing the jury that they should find the defendant not responsible by reason of insanity if they "are convinced from all the evidence in the case that the defendant was more probably insane than sane at the time of the offense." Id. Instruction 7A's simultaneous use of the word, "convinced," to define reasonable doubt and to refer to

insanity was internally inconsistent.[3] This error was further compounded by the placement of a discussion of insanity in a beyond a reasonable doubt instruction and the lack of a reference to preponderance of the evidence anywhere in the instruction. Thus, Instruction 7A may have misled the jury to believe that insanity must be proven beyond a reasonable doubt.

While Instruction 5 properly instructed the jury that the defendant bears the burden of proving the defense of insanity by a preponderance of the evidence, it contributed to the confusion by using the word, "convinced," to define preponderance of the evidence. While we consider instructions as a whole, however, properly instructing the jury in Instruction 5 that Sanchez had the burden of proving insanity by a preponderance of evidence did not cure the internal inconsistency in Instruction 7A nor its implication that the burden of proof for insanity was beyond a reasonable doubt. See Thomas v. State, 442 N.E.2d 700, 701 (Ind. Ct. App. 1982) (finding error when a jury instruction explaining how the jury should weigh the evidence referred to a preponderance of the evidence even though the jury was properly instructed in another instruction as to the State's burden of beyond a reasonable doubt). Because the effect of Instruction 7A was to heighten the burden of proof for the insanity defense from a preponderance of the evidence to beyond a reasonable doubt and Sanchez's sole defense was insanity, I believe this erroneous instruction rendered a fair trial impossible and therefore amounted to fundamental error. Cf. id. (finding fundamental error when the

---

[3] I do not believe that the instruction's use of the phrase, "firmly convinced," to refer to reasonable doubt and the word, "convinced," to refer to insanity clarified the confusion.

9

effect of the jury instruction at issue was to reduce the State's burden of proof from beyond a reasonable doubt to preponderance of the evidence).

Nor was this error harmless as the State contends. At trial, Sanchez presented Dr. Parker's expert testimony in support of his insanity defense. Indiana courts have held that conflicting expert testimony is sufficiently probative of sanity. Galloway v. State, 938 N.E.2d 699, 710 (Ind. 2010). It therefore follows that conflicting expert testimony is sufficient to support a finding of insanity. Thus, it was up to the jury, as the trier of fact, to determine whether to accept or reject Dr. Parker's testimony. See Berry v. State, 969 N.E.2d 35, 43 (Ind. 2012). Because the jury instructions heightened the burden of proof on Sanchez's sole defense for which he presented sufficient evidence, I would conclude that the error was not harmless and requires reversal. See Palmer v. State, 553 N.E.2d 1256, 1260 (Ind. Ct. App. 1990) (stating that if the instruction at issue had erroneously stated which party bore the burden to prove sudden heat, the court may have concluded that the error was harmless, but because the instruction misled the jury as to the "quantum of evidence necessary to reduce murder to voluntary manslaughter," the error required reversal), summarily aff'd by 573 N.E.2d 880, 880 (Ind. 1991); cf. Reid v. State, 529 N.E.2d 1309, 1310 (Ind. 1988) (holding that the instruction shifting the burden of proof on the issue of intent was fundamental error but that error was harmless because the intent to kill was not contested at trial and the defendant instead relied exclusively upon an alibi defense).

Because Instruction 7A improperly raised Sanchez's burden of proof for establishing the affirmative defense of insanity from preponderance of the evidence to beyond a

reasonable doubt, I believe it constituted fundamental error.  Thus, I would reverse Sanchez's convictions and remand for a new trial.