Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Sep 13 2013, 5:23 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**SUZY ST. JOHN**
Marion County Public Defender Agency
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**ANDREW FALK**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| LAMAR MILLER, ) | |
| ) | |
| Appellant-Defendant, ) | |
| ) | |
| vs. ) | No. 49A05-1302-CR-46 |
| ) | |
| STATE OF INDIANA, ) | |
| ) | |
| Appellee-Plaintiff. ) | |

APPEAL FROM THE MARION SUPERIOR COURT
The Honorable Helen W. Marchal, Judge
Cause No. 49G16-1211-CM-78461

**September 13, 2013**

**MEMORANDUM DECISION – NOT FOR PUBLICATION**

**MATHIAS, Judge**

Following a bench trial, Lamar Miller ("Miller") was convicted of Class A misdemeanor invasion of privacy. Miller appeals and argues that the State failed to present sufficient evidence to support his conviction.

We disagree and affirm.

**Facts and Procedural History**

On October 30, 2012, in response to domestic violence and battery charges brought against Miller, the trial court ordered Miller to have no direct or indirect contact with Heather Deckard ("Deckard"). Miller and Deckard had been dating for some time and had an infant daughter together. Miller signed the no-contact order, acknowledging that he read and understood it.

Three days later, on November 2, 2012, both Miller and Deckard appeared in person at a hearing before the trial court. At the hearing, Deckard asked the court to lift the no-contact order. The trial court denied Deckard's request in open court, in the presence of both Deckard and Miller.

Two weeks later, on November 16, 2012, Emergency Medical Services was called to Miller's residence at 1170 North Mitthoeffer Road in Indianapolis. A police officer was dispatched to assist EMS with "a possible domestic situation." Tr. p. 12. When the officer arrived at the residence, he found Miller and Deckard there together. EMS personnel were treating Deckard. The officer determined that Deckard's injury was not the result of domestic violence. However, because the officer "had previous knowledge" of a domestic disturbance between Deckard and Miller, he performed a warrants check and discovered the existence of the no-contact order. The officer then arrested Miller for

2

invasion of privacy. After his arrest, Miller acknowledged to the officer "that there was a no-contact order" but stated that "he didn't believe that [he] . . . should have been arrested for that case which was the reason for the no-contact order." Tr. p. 16.

A bench trial was held on January 9, 2013. At trial, Miller testified that, at the time of his arrest, he believed that the no-contact order had been lifted after Deckard "wrote a letter."[1] Tr. p. 21. He stated that Deckard had told him that the no-contact order had been lifted. He also testified, however, that he was not sure of the proper procedure by which a no-contact order is lifted and that, during the three weeks between the entry of that order and his arrest, neither his attorney nor the trial court had indicated to him that the no-contact order had been vacated. The trial court found Miller guilty of Class A misdemeanor invasion of privacy, stating:

> Listening to the witness's testimony, I do want to remind you [of] a certain baseline of responsibility that you have as the Defendant. You obviously knew that the no-contact order had been issued. Your signature is on that document and it seems as though it was more wishful thinking that it had been vacated by virtue of Miss Deckard's letter.

Tr. pp. 27-28.

The trial court sentenced Miller to 365 days, with credit for seven days already served and the remaining 351 days suspended to probation. The court also ordered Miller to attend twenty-six domestic violence classes. Miller now appeals.

---

[1] Deckard testified at trial: "After the first case, after [Miller] got arrested, the first time I came down and I wrote a statement and after I wrote that statement, to my knowledge, I thought the…I didn't know there was a restraining order or anything." Tr. p. 6. It appears that Deckard had written a supplemental statement to the Marion Superior Court victim's advocate "recanting her original case." Tr. p. 10. After Deckard made the supplemental statement, the victim's advocate explained to Deckard that the no-contact order remained in place. Id.

3

**Discussion and Decision**

In reviewing a challenge to the sufficiency of the evidence, we neither reweigh the evidence nor judge the credibility of witnesses. Atteberry v. State, 911 N.E.2d 601, 609 (Ind. Ct. App. 2009). Instead, we consider only the evidence supporting the conviction and the reasonable inferences to be drawn therefrom. Id. If there is substantial evidence of probative value from which a reasonable trier of fact could have drawn the conclusion that the defendant was guilty of the crime charged beyond a reasonable doubt, then the judgment will not be disturbed. Baumgartner v. State, 891 N.E.2d 1131, 1137 (Ind. Ct. App. 2008). It is not necessary that the evidence overcome every reasonable hypothesis of innocence; rather, the evidence is sufficient if an inference may reasonably be drawn from it to support the judgment. Drane v. State, 867 N.E.2d 144, 147 (Ind. 2007). Therefore, the question on appeal is whether the inferences supporting the judgment were reasonable, not whether other, "more reasonable" inferences could have been made. Thompson v. State, 804 N.E.2d 1146, 1150 (Ind. 2004). Reaching alternative inferences is the function of the trier of fact and we cannot reverse a conviction merely because a different inference might plausibly be drawn from the evidence. Id.

In order to support Miller's Class A misdemeanor invasion of privacy conviction, the State was required to prove that Miller knowingly or intentionally violated a protective order. Ind. Code § 35-46-1-15.1(1). "A person engages in conduct 'knowingly' if, when he engages in the conduct, he is aware of a high probability that he is doing so." Ind. Code § 35-41-2-2(b). A person engages in conduct intentionally if it is the person's conscious objective to do so. Ind. Code § 35-41-2-2(a). Knowledge and

4

intent are mental states of the actor; therefore, the trier of fact must make reasonable inferences based on an examination of the surrounding circumstances to reasonably infer their existence. Jernigan v. State, 612 N.E.2d 609, 613 (Ind. Ct. App. 1993), trans. denied.

Miller does not dispute the sufficiency of the evidence to prove that he was unlawfully in Deckard's presence on November 16, 2012. Instead, he argues that the State failed to prove that he did so knowingly or intentionally. Specifically, he asserts: "[b]ecause neither Deckard nor Miller believed the no-contact order was in place on November 16, there is not substantial evidence of probative value from which a finder of fact could find beyond a reasonable doubt that Miller knowingly violated a no-contact order." Appellant's Reply Br. at 3.

Miller's argument amounts to a request that we reweigh the evidence and judge for ourselves the credibility of the witnesses. We will not do this. See McHenry v. State, 820 N.E.2d 124, 127 (Ind. 2005). The evidence favorable to the trial court's ruling indicates that Miller knew that his contact with Deckard was unlawful. Miller signed the no-contact order, acknowledging that he had read and understood its terms and prohibitions. He was present at the hearing at which the trial court denied Deckard's request to vacate the no-contact order. There were no records or paperwork demonstrating to either Miller or Deckard that the no-contact order had been lifted. At trial, Miller testified that he was unsure of the procedure by which a no-contact order is vacated. He further testified that neither the trial court nor his attorney had indicated to him that the no-contact order had been lifted. Indeed, there is no evidence that Miller

5

sought to confirm in any way Deckard's statement that the no-contact order had been lifted. Importantly, after Miller's arrest, he acknowledged the existence of the no-contact order to the arresting officer.

## Conclusion

For all of these reasons, we conclude that the State presented sufficient evidence to support Miller's Class A misdemeanor invasion of privacy conviction.

Affirmed.

NAJAM, J., and BROWN, J., concur.