# FOR PUBLICATION

ATTORNEY FOR APPELLANT:

**THOMAS W. VANES**
Office of the Public Defender
Crown Point, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**J.T. WHITEHEAD**
Deputy Attorney General
Indianapolis, Indiana



FILED

Apr 29 2014, 9:42 am

CLERK
of the supreme court,
court of appeals and
tax court

# IN THE
# COURT OF APPEALS OF INDIANA

JAMAL AHMAD GORE,                    )
                                     )
    Appellant-Defendant,             )
                                     )
        vs.                       )    No. 45A03-1305-CR-163
                                     )
STATE OF INDIANA,                    )
                                     )
    Appellee-Plaintiff.              )

APPEAL FROM THE LAKE SUPERIOR COURT
The Honorable Diane Ross Boswell, Judge
Cause No. 45G03-1005-MR-8

**April 29, 2014**

**OPINION - FOR PUBLICATION**

**MAY, Judge**

Jamal Ahmad Gore appeals the jury's finding that Gore was guilty of murder[1] and Class C felony battery,[2] but mentally ill at the time of the crime.  Gore asserts the jury clearly erred in finding Gore guilty but mentally ill, instead of not guilty by reason of insanity.  We affirm.

## FACTS AND PROCEDURAL HISTORY

Gore was diagnosed as schizophrenic around age thirteen.  He attended various schools without much success and was in and out of the family home due to his confrontational behavior.  Gore's parents had him hospitalized for mental health reasons at least five times between 2002 and 2009.  In mid-May of 2010, Gore's parents again requested an emergency detention order for their son because Gore was dressing heavily in a hot room, he was accusing a nephew of taking his property, he drove his car on its wheel rim to the body shop and claimed the tire had been shot, and he was not taking his medication.  That order was never executed, and Gore was never picked up.

On May 24, 2010, Gore called an old friend from school, John Davis, Jr., numerous times until Davis finally answered.  Gore sounded upset on the phone, so Davis and his girlfriend, Melissa Maida, went to pick up Gore at his home.  Gore came out of his home overdressed for the warm day, wearing all black attire, including a hoodie sweat shirt, black pants, and a hat.  Gore did not appear agitated.  The three drove to a gas station, where Davis bought cigarettes, and then, at Gore's request, they drove around attempting to buy

---

[1] Ind. Code § 35-42-1-1.
[2] Ind. Code § 35-42-2-1.

marijuana.  As Maida was driving the three down the road after a failed attempt to buy marijuana, Maida heard gunshots.  Gore had shot Davis five times in the head, neck, and back, and had shot Maida in the leg.  Gore kicked open the back door and ran away.  When police arrived they found Davis dead in the car.  They found Gore four blocks east of where the shooting occurred.  Homicide Detective William Fazekas described Gore as calm and straightforward, not agitated or aggressive, and answering questions like a "normal person" would.  (Tr. at 202.)  Within 24 hours of Gore's arrest, medical and mental health personnel at the jail noted Gore was agitated, withdrawn, depressed and paranoid.

The State charged Gore with Murder and Class C felony battery.  The trial court held a competency hearing on September 30, 2010, and found Gore not competent to stand trial.  Following a report from the Division of Mental Health dated January 4, 2011, the court found Gore competent to stand trial.  The trial court appointed Dr. Jill Miller, Dr. R. Bhawami Prasad, and Dr. Douglas Caruana to evaluate Gore, and Gore retained an expert, Dr. Stephanie Calloway.  The jury trial commenced on October 30, 2012, and all four experts testified.  The jury concluded that Gore was guilty but mentally ill with respect to both offenses.  The court sentenced Gore to fifty years for murder and two years for battery.

## DISCUSSION AND DECISION

A person is not responsible for engaging in prohibited conduct if he is "unable to appreciate the wrongfulness of the conduct at the time of the offense" because of a mental disease or defect.  Ind. Code § 35-41-3-6(a).  Mental illness alone is insufficient, the qualifying mental disease or defect must be a "severely abnormal mental condition that

3

grossly and demonstrably impairs a person's perception." Ind. Code § 35-41-3-6(b). If the mental illness does not reach the level required by statute, the jury may find the defendant "guilty but mentally ill" at the time of the crime. Ind. Code § 35-36-2-3(4). Whether a defendant appreciated the wrongfulness of his or her conduct at the time of the offense is a question for the trier of fact. *Galloway v. State*, 938 N.E.2d 699, 709 (Ind. 2010), *reh'g denied*.

An appellant who complains he or she ought to have been found not guilty by reason of insanity faces a heavy burden on appeal. *Id.* Because it is the trier of fact's province to weigh evidence and assess witness credibility, a finding that a defendant was not insane at the time of the offense warrants substantial deference from reviewing courts. *Id.* Thus, we may not reweigh evidence, reassess witness credibility, or disturb reasonable inferences made by the trier of fact. *Id.* We may set aside set aside a conviction only "when the evidence is without conflict and leads only to the conclusion that the defendant was insane when the crime was committed." *Id.* at 710 (quoting *Thompson v. State*, 804 N.E.2d 1146, 1149 (Ind. 2004)).

Gore asserts there was no conflict among experts and, therefore, no sufficient probative evidence from which a conflicting inference of sanity reasonably could be drawn. Expert testimony may be offered to assist the trier of fact in determining the defendant's mental status, Ind. Code § 35-36-2-2, but such testimony is merely advisory, as even unanimous expert testimony is not conclusive on the issue of sanity. *Galloway*, 938 N.E.2d at 709. If all experts testify that a defendant was insane, a jury still may find a defendant was

4

sane if there is other sufficient probative evidence from which a conflicting inference of sanity reasonably could be drawn. *Id.* at 710. The strongest showing of an evidentiary conflict occurs where the experts disagree as to whether the defendant was insane at the time of the offense, *id.*, and here, such conflict existed.

Dr. Callaway testified that she looked for an "impaired" ability to appreciate wrongfulness, not a total inability to appreciate wrongfulness as is required by the statute. (Tr. at 531.) She conceded that she used the "impaired ability" and "total inability" standard interchangeably. (*Id.* at 554.) Her incorrect application of the "impaired ability" standard would permit the jury to give Dr. Calloway's testimony little or no weight.

Dr. Miller applied the correct standard, but her testimony did nothing to help Gore's insanity defense. Dr. Miller originally filed a report stating that Gore could appreciate the wrongfulness of his conduct, but she amended this report and testified at trial that she thought Gore's mental state "might" have interfered with his ability to appreciate the wrongfulness of his actions. (*Id.* at 677.) Her position on the issue was so equivocal that Gore moved to strike her testimony altogether for not being an opinion.

Gore argues Dr. Caruana also did not state an opinion. Dr. Caruana testified Gore was not insane at the time of the murder. He said Gore's behavior leading up to the shooting was consistent with mental illness, but Dr. Caruana still could not say Gore was insane at the time of the murder because his behavior did not reflect the "grossly and demonstrably impaired functioning of thinking" required by the statute. Ind. Code § 35-41-3-6(b).

5

The final expert, Dr. Prasad, testified he believed Gore was insane at the time of the offense based on his interviews with Gore's mother and cousin. Dr. Prasad interviewed Gore, but his conclusion Gore was insane was based not on his interview with Gore, but "based on what his mother and his cousin said." (Tr. at 791.)

In summary, the testimony did not, as Gore asserts, reflect that three experts found Gore insane and one expert provided no opinion. On the contrary, it showed Dr. Calloway applied an incorrect standard, Dr. Miller testified Gore's ability to appreciate wrongfulness "might" have been affected by his mental illness, (*id*. at 677), Dr. Caruana testified Gore was not insane, and Dr. Prasad testified Gore was insane based on his interviews with Gore's mother and cousin. The disagreement among the experts as to whether Gore was insane at the time of his offense amounts to an evidentiary conflict. *See Galloway*, 938 N.E.2d at 710. This is not a case of consistent testimony leading only to the conclusion Gore was insane. Therefore, Gore is essentially asking that we reweigh the evidence, which we cannot do. *Id.* at 709.

## CONCLUSION

Gore has not shown that the evidence is without conflict and leads only to the conclusion that he was insane when the crime was committed. Accordingly, we affirm.

Affirmed.

VAIDIK, C.J., and RILEY, J., concur.

6