# MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

May 10 2019, 9:59 am

C L E R K
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

K. Aaron Heifner
Anderson, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Jesse R. Drum
Deputy Attorney General
Indianapolis, Indiana

## IN THE
## COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Lazarus White, II, <br> *Appellant-Defendant,* <br><br> v. <br><br> State of Indiana, <br> *Appellee-Plaintiff.* | May 10, 2019 <br><br> Court of Appeals Case No. 18A-CR-975 <br><br> Appeal from the Madison Circuit Court <br><br> The Honorable Thomas Newman, Jr., Judge <br><br> Trial Court Cause No. 48C03-1702-F4-435 |

**Tavitas, Judge.**

## Case Summary

[1] Lazarus White appeals his convictions for unlawful possession of a firearm by a serious violent felon, a Level 4 felony, and theft, a Level 6 felony. We affirm.

## Issues

[2] White raises two issues on appeal, which we restate as:

I. Whether the trial court erred in finding White guilty but mentally ill instead of not guilty by reason of insanity.

II. Whether the evidence is sufficient to convict White of unlawful possession of a firearm and theft.

## Facts

[3] On February 8, 2017, Michael Hennis was taking his lunch break at his sister's home in Madison County when White knocked on the door. Hennis allowed White in the home to use the phone and restroom. Hennis' sister lives at the home with her boyfriend and three children. While White was not an invited guest at the home that day, he had been there before, and it was not unusual for him to visit.

[4] While inside the home, White made himself something to eat, used the restroom, and called for a ride. During this time, according to Hennis, White was acting "[k]ind of sketchy[,]" and "like he really didn't want to be there." Tr. p. 35. Hennis played video games while White waited for his ride. After using the upstairs restroom, White took Hennis' AR-15 gun that was stored in an upstairs bedroom. Hennis observed White leaving the home with the

weapon, which Hennis could see partially tucked inside White's coat. Approximately three hours later, Hennis filed a police report with Officer Brandon Reynolds at the Anderson Police Department. Based on the record, it does not appear the weapon was ever recovered; however, the State produced photos of the weapon that Hennis had on his phone.

[5] White was arrested, and a bench trial was set to begin in March 2018. On March 3, 2018, White filed a belated notice of insanity defense. On March 7-8, 2018, the trial court heard evidence with regard to White's insanity defense and held a bench trial on the charges.

[6] Dr. Susan Anderson testified that she did not believe White was suffering from a mental disease or defect at the time of the offense to the point that White should be excused from responsibility for his criminal acts. In reaching this determination, Dr. Anderson reviewed the arrest report, spoke with White's mother, and spoke with White on November 29, 2017. White admitted to Dr. Anderson that, on the day of the alleged crime, White used cocaine and was not on his psychiatric medications. Further, Dr. Anderson testified regarding her diagnosis of White—namely, that she believed that White suffered from paranoid schizophrenia and substance abuse. White also suffered as a child from attention deficit hyperactivity disorder.

[7] Dr. Ned Masbaum testified that White "was of unsound mind at the time of the alleged offenses. He was not able to appreciate the wrongfulness of his behavior at that time." *Id.* at 17. In reaching this determination, Dr. Masbaum

reviewed (1) the probable cause affidavit, (2) the charging informations, (3) the court order for the examination, and (4) White's past medical history, personal history, and mental status examination. Additionally, Dr. Masbaum spoke with White's mother and father and spoke with White on October 12, 2017. Dr. Masbaum also opined that White has a severe mental disease of schizophrenia. White told Dr. Masbaum that White was "dependent on marijuana, heroin, crack cocaine, and alcohol but he denied using any of those substances at the time of the alleged offenses." *Id.* at 22. Dr. Masbaum stated that, although White did not admit to any substance abuse at the time of the offense, even if he had, that would not have impacted Dr. Masbaum's opinion of White's insanity.

[8] During presentation of the State's evidence, Hennis testified to the foregoing facts. Hennis, however, provided somewhat inconsistent or confusing testimony. First, Hennis was unclear as to why he allowed White to stay and eat lunch in the home, while awaiting a ride despite Hennis' accusation that White was acting "sketchy." *Id.* at 33. Second, Hennis was unclear as to why he waited three hours to report the stolen weapon, other than stating that he "tried to give [White] a chance to bring [the weapon] back . . ." *Id.* at 53. Third, Hennis was unclear about whether he initially saw White come down the stairs with the weapon, or whether it was some time after White used the restroom that Hennis observed White with the weapon. Fourth, the police report indicates that Hennis told Officer Reynolds that he chased White as White left the home, shouting, "Are you really going to do this to me?!";

whereas, at trial, Hennis testified that he did not chase after White. Appellant's App. Vol. II p. 18. Fifth, the police report does not mention anything about Robert Anderson, the individual who picked White up from the home, coming into the home; whereas, at trial, Hennis testified that Anderson came in the home and spoke with Hennis before leaving with White.

[9] The trial court found White guilty of theft, a Level 6 felony. Subsequently, the State admitted a certified copy of White's previous convictions for burglary and theft. White's counsel "stipulate[d] to the priors." Tr. p. 88. Accordingly, the trial court found White guilty of unlawful possession of a firearm by a serious violent felon, a Level 4 felony. At sentencing, the trial court amended White's verdict for both convictions to guilty but mentally ill. White now appeals.

## Analysis

### A. Insanity defense

[10] White first argues that the trial court erred in finding him guilty but mentally ill instead of finding White guilty by reason of insanity.[1] "To convict a criminal defendant, the State must prove each element of the offense beyond a reasonable doubt." *Barcroft v. State,* 111 N.E.3d 997, 1002 (Ind. 2018) (citing Ind. Code § 35-41-4-1(a)). However,

---

[1] The trial court did not appear to explicitly reject White's insanity defense. The trial court heard evidence on the insanity defense and then continued directly to evidence on the theft charge. At the close of the evidence, the trial court found White guilty, thereby implicitly denying White's insanity defense.

> [A] defendant may avoid criminal responsibility by invoking the insanity defense. This plea requires the defendant to prove by a preponderance of the evidence (1) that [he] suffers from a mental disease or defect and (2) that the mental disease or defect rendered [him] unable to appreciate the wrongfulness of [his] conduct at the time of the offense. Proof of mental illness alone is not enough.

*Id.* (citations and quotations omitted).

[11] When reviewing a trial court's conclusion that a defendant was not insane at the time of the offense, we give substantial deference to the trial court. *See id.* "On review, we do not reweigh evidence, reassess witness credibility, or disturb the factfinder's reasonable inferences." *Id.* (citing *Myers v. State,* 27 N.E.3d 1069, 1074 (Ind. 2015)). "We will instead affirm the trial court's conviction unless 'the evidence is without conflict and leads only to the conclusion that the defendant was insane when the crime was committed.'" *Id.* (quoting *Thompson v. State,* 804 N.E.2d 1146, 1149 (Ind. 2004)).

[12] Here, Dr. Anderson and Dr. Masbaum agreed that White suffered from schizophrenia, which satisfies the first prong of the insanity defense. This alone, however, is not enough. *See Barcroft,* 111 N.E.3d at 1002. Additionally, White was required to prove that this mental illness rendered him unable to appreciate the wrongfulness of his conduct at the time of the offense. *See id.* Dr. Anderson and Dr. Masbaum disagreed about whether White was unable to appreciate the wrongfulness of his conduct at the time of the offense. This alone was sufficient for the trial court, as fact finder, to conclude that White

was not suffering from insanity at the time of the offense. *See Galloway v. State,* 938 N.E.2d 699, 708 (Ind. 2010) ("Our cases have consistently held that conflicting credible expert testimony is sufficiently probative of sanity.").

[13] The trial court was in the best position to weigh the two conflicting expert opinions and make a determination. The trial court ultimately made the determination that White was guilty but mentally ill.[2] Our review of the evidence does not "lead[] only to the conclusion that the defendant was insane when the crime was committed." *See Barcroft,* 111 N.E.3d at 1002. Accordingly, the trial court did not err in finding White guilty but mentally ill instead of not guilty by reason of insanity.

### B. Sufficient Evidence

[14] Next, White challenges the sufficiency of the evidence for his convictions. When there is a challenge to the sufficiency of the evidence, "[w]e neither reweigh evidence nor judge witness credibility." *Gibson v. State,* 51 N.E.3d 204, 210 (Ind. 2016) (citing *Bieghler v. State,* 481 N.E.2d 78, 84 (Ind. 1985), *cert. denied*), *cert. denied*. Instead, "we 'consider only that evidence most favorable to the judgment together with all reasonable inferences drawn therefrom.'" *Id.* (quoting *Bieghler,* 481 N.E.2d at 84). "We will affirm the judgment if it is supported by 'substantial evidence of probative value even if there is some

---

[2] Pursuant to Indiana Code Section 35-36-2-3, the trial court, as fact finder, could have found White either guilty, not guilty, not responsible by reason of insanity at the time of the crime, or guilty but mentally ill at the time of the crime.

conflict in that evidence.'" *Id.* (quoting *Bieghler,* 481 N.E.2d at 84)*; see also McCallister v. State,* 91 N.E.3d 554, 558 (Ind. 2018) (holding that, even though there was conflicting evidence, it was "beside the point" because that argument "misapprehend[s] our limited role as a reviewing court"). Further, "[w]e will affirm the conviction unless no reasonable fact-finder could find the elements of the crime proven beyond a reasonable doubt." *Love v. State,* 73 N.E.3d 693, 696 (Ind. 2017) (citing *Drane v. State,* 867 N.E.2d 144, 146 (Ind. 2007)).

[15] Specifically, White contends that the main issue regarding the evidence surrounds Hennis, the State's witness who provided the facts supporting the theft conviction. White contends that a "review of the incredible dubiosity of the State's witness" is required. Appellant's Br. p. 7. The incredible dubiosity rule "allows an appellate court to impinge upon the fact-finder's assessment of witness credibility when the testimony at trial was so 'unbelievable, incredible, or improbable that no reasonable person could ever reach a guilty verdict based upon that evidence alone.'" *Carter v. State,* 44 N.E.3d 47, 52 (Ind. Ct. App. 2015) (quoting *Moore v. State,* 27 N.E.3d 749, 751 (Ind. 2015)). "Incredible dubiosity is a difficult standard to meet, requiring ambiguous, inconsistent testimony that 'runs counter to human experience.'" *Id.* (quoting *Edwards v. State,* 753 N.E.2d 618, 622 (Ind. 2001)). In *Moore,* our Supreme Court held that "the appropriate scope of the incredible dubiosity rule as utilized in Indiana and other jurisdictions requires that there be 1) a sole testifying witness; 2) testimony that is inherently contradictory, equivocal, or the result of coercion; and 3) a complete absence of circumstantial evidence." *Moore,* 27 N.E.3d at 756.

[16] While we agree with White that there were some inconsistencies in Hennis' testimony, as described above, these inconsistencies do not rise to the level of incredible dubiosity.[3] First, as to the discrepancies between Hennis' pretrial statements and trial testimony, "When a witnesss's trial testimony contradicts a statement she made before trial, it is the jury's province to decide which statement to believe." *Chambless v. State,* 119 N.E.3d 182, 193 (Ind. Ct. App. 2019), *trans. denied.* "Discrepancies between pretrial statements and trial testimony go to the weight of testimony and credibility of the witness but do not render such testimony incredibly dubious." *Id.* The defense pointed out the inconsistencies in Hennis' pretrial and trial testimony, and the trial court ultimately decided that Hennis was credible.

[17] As to Hennis' trial testimony, while some of the details may have been unclear, Hennis was clear that White was in the home that day, went upstairs to use the restroom, and left the home with Hennis' AR-15 without Hennis' permission. Hennis' testimony is not so "unbelievable, incredible, or improbable that no reasonable person could ever reach a guilty verdict based upon that evidence alone." *Carter,* 44 N.E.3d at 52. Instead, several of these inconsistencies were "put squarely before the fact-finder, and the judge made a credibility call." *Id.* at 54. The evidence is sufficient to sustain White's convictions.

---

[3] We would not necessarily describe all of Hennis' corrected statements as inconsistent as White does. For example, at one point during his testimony, Hennis stated he lived with his sister until 2017, but then almost immediately corrected that statement to 2016. *See* Tr. p. 32.

## Conclusion

[18]     Based on the foregoing, the trial court did not err in finding White guilty but mentally ill instead of not guilty by reason of insanity, and there is sufficient evidence to sustain White's convictions.  We affirm.

[19]     Affirmed.

Baker, J., and May, J., concur.