**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



FILED

Nov 03 2014, 10:06 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**SUSAN D. RAYL**
Smith Rayl Law Office
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**LARRY D. ALLEN**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| GEORGE IVORY, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 49A02-1404-CR-263 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE MARION SUPERIOR COURT CRIMINAL DIVISION 2
The Honorable Amy Barbar, Magistrate
Cause No. 49G02-1301-FC-003955

**November 3, 2014**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**FRIEDLANDER, Judge**

George Ivory appeals his conviction of Burglary,[1] a class C felony, presenting the following restated issue for review: Was the evidence sufficient to support the trial court's finding that, notwithstanding his diminished mental capacity, Ivory possessed the requisite mens rea to commit burglary?

We affirm.

The facts favorable to the conviction are that at approximately 6:15 p.m. on January 16, 2013, Zachary Neiditch, who was staying at his parents' home, heard noises coming from outside. He went to a window and saw a man, later identified as Ivory, stealing various items from his parents' garage, including a lawnmower. After confirming that his father had not given anyone permission to take anything, Neiditch called police. Indianapolis Metropolitan Police Department Officers Joel Reierson and Thomas White responded to the call. They found Ivory attempting to pull a lawnmower through Neiditch's fence gate. Other items that had been removed from the garage lay between the house and the gate.

After he was Mirandized, Ivory agreed to speak with the officers. He claimed that he previously knew the people who lived at the house and that he found a lawnmower in

---

[1] The version of the governing statute, i.e., Ind. Code Ann. § 35-43-2-1 (West, Westlaw 2013) in effect at the time this offense was committed classified it as a class C felony. This statute has since been revised and in its current form reclassifies this as a Level 5 felony. *See* I.C. § 35-43-2-1 (West, Westlaw current with all 2014 Public Laws of the Second Regular Session and Second Regular Technical Session of the 118th General Assembly). The new classification, however, applies only to offenses committed on or after July 1, 2014. *See id.* Because this offense was committed on January 16, 2013, it retains the former classification.

the backyard. He admitted, however, that he had taken a weedeater, a crate of tools, and a gas can from inside the garage. Ivory was arrested and charged with burglary and theft.

Prior to trial, the trial court ordered an examination to determine Ivory's state of mind on the date of the alleged offenses and his competence to stand trial. A hearing was conducted on the subject of Ivory's competency. Dr. Don Olive is a licensed clinical psychologist who was appointed by the court to evaluate Ivory's competency, i.e, to assess his ability to understand the nature of the proceedings and assist his attorney at trial. Dr. Olive also performed an evaluation to determine Ivory's mental state on the date of the alleged offense. Dr. Olive testified that Ivory understood the charges against him. He "had some idea of the potential severity of the punishment if convicted." *Transcript* at 5. The report issued by Dr. Olive stated, in pertinent part:

> based upon what appears to be significantly limited intellect, as well as Mr. Ivory's style of communication, ascertaining his comprehension of certain terms and concepts often required additional inquiry from this evaluator. Defense counsel would do well to consider this tendency when interacting with Mr. Ivory. Although, as previously noted, Mr. Ivory has significantly limited intellect, and, per the records from Marion County Jail, has recently been diagnosed with a Major Depressive Disorder, I currently do not see significant signs of mental disease or mental defect that might significantly compromise the current competencies at issue. Thus, the aforementioned impairments notwithstanding, It [sic] is my opinion that Mr. Ivory does possess sufficient present ability to consult with his attorney with a reasonable degree of rational understanding and a rational, as well as a factual, understanding of the proceedings against him, i.e., he is **competent**.

*Appellant's Confidential Appendix* at 17 (emphasis in original). On the question of Ivory's mental condition at the time of the offenses, Dr. Ivory's report stated:

3

with regard to his mental state at the time of the offense, in reviewing his brief narrative as well as the Probable Cause Affidavit, there appears to be no clear evidence of mental disease or mental defect, e.g., symptomatology consistent with a psychotic disorder such as delusions or hallucinations or mental retardation, that militated against Mr. Ivory's capacity to appreciate the wrongfulness of his conduct.

*Id.* Ultimately, Ivory was found competent to stand trial, and a bench trial was conducted. With respect to both charges, the trial court found Ivory guilty but mentally ill. The court merged the theft conviction into the burglary conviction and entered judgment of conviction only on the latter.

Ivory contends the evidence was not sufficient to prove that he had the requisite mens rea at the time he committed the offense. In order to convict Ivory of burglary, the State was required to prove that he broke and entered the Neiditches' garage with the intent to commit a felony or theft inside. *See* I.C. § 35-43-2-1. Ivory contends that the State failed to prove the requisite intent. According to Ivory, he "suffers from diminished capacity that made it unlikely that he could have entered the garage with the intent to commit theft." *Appellant's Brief* at 5.

When, as here, a defendant raises the insanity defense, the trier of fact has the additional option of finding the defendant "not responsible by reason of insanity at the time of the crime" or "guilty but mentally ill at the time of the crime". *See* Ind. Code Ann. § 35-36-2-3 (West, Westlaw current with all 2014 Public Laws of the 2014 Second Regular Session and Second Regular Technical Session of the 118th General Assembly). The insanity defense is an affirmative defense for which the defendant carries the burden of

4

proof by a preponderance of the evidence. Ind. Code Ann. § 35-41-4-1 (West, Westlaw current with all 2014 Public Laws of the 2014 Second Regular Session and Second Regular Technical Session of the 118th General Assembly). In order to prevail, a defendant must establish that he suffers from a mental disease or defect and that the mental disease or defect rendered him unable to appreciate the wrongfulness of his conduct at the time of the offense. "[A] defendant who is mentally ill but fails to establish that he or she was unable to appreciate the wrongfulness of his or her conduct may be found guilty but mentally ill[.]" *Galloway v. State*, 938 N.E.2d 699, 708 (Ind. 2010).

Our Supreme Court has set out the standard for reviewing claims of insufficient evidence pertaining to whether a defendant appreciated the wrongfulness of his or her conduct at the time of the offense, as follows:

> Whether a defendant appreciated the wrongfulness of his or her conduct at the time of the offense is a question for the trier of fact. *Thompson v. State,* 804 N.E.2d 1146, 1149 (Ind. 2004). Indiana Code section 35–36–2–2 provides for the use of expert testimony to assist the trier of fact in determining the defendant's insanity. Such expert testimony, however, is merely advisory, and even unanimous expert testimony is not conclusive on the issue of sanity. … The trier of fact is free to disregard the unanimous testimony of experts and rely on conflicting testimony by lay witnesses. And even if there is no conflicting lay testimony, the trier of fact is free to disregard or discredit the expert testimony.
>
> Because it is the trier of fact's province to weigh the evidence and assess witness credibility, a finding that a defendant was not insane at the time of the offense warrants substantial deference from reviewing courts. A defendant claiming the insanity defense should have prevailed at trial faces a heavy burden because he or she "is in the position of one appealing from a negative judgment." *Thompson,* 804 N.E.2d at 1149. A court on review will not reweigh evidence, reassess witness credibility, or disturb reasonable

5

inferences made by the trier of fact (even though "more reasonable" inferences could have been made).

Although this standard of review is deferential, it is not impossible, nor can it be. The Indiana Constitution guarantees "in all cases an absolute right to one appeal." Ind. Const. art. VII, § 6. An impossible standard of review under which appellate courts merely "rubber stamp" the fact finder's determinations, no matter how unreasonable, would raise serious constitutional concerns because it would make the right to an appeal illusory. *Cf. Serino v. State,* 798 N.E.2d 852, 856 (Ind. 2003) (standard of review for sentencing claims so high that it risked impinging upon the constitutional right to appeal). As such, this Court has long held that where the defendant claims the insanity defense should have prevailed, the conviction will be set aside "when the evidence is *without conflict* and leads only to the conclusion that the defendant was insane when the crime was committed." *Thompson,* 804 N.E.2d at 1149 (emphasis added)[.]

*Id.* at 709-10 (emphasis in original) (some internal citations to authority omitted).

There is no question as to Ivory's identity as the person who took items from the Neiditches' garage. Zachary Neiditch watched Ivory do it, and police caught Ivory in the act of trying to drag a lawnmower through the Neiditches' fence gate when they arrived. Moreover, Ivory admitted at the scene that he took several items out of the garage. The issue presented is whether Ivory established by a preponderance of the evidence that he was unable to appreciate the wrongfulness of his conduct at the time of the offense. Officer Reierson, who responded to the burglary call and spoke with Ivory at the scene, testified that he did not notice anything amiss with respect to Ivory's mental condition. He further testified that Ivory responded lucidly to the questions posed to him. The State also presented the testimony of Dr. Olive at a pretrial competency hearing. Dr. Olive testified that Ivory was not suffering from delusions or other conditions that would have impaired

6

his appreciation of the wrongfulness of his conduct at the time of the crime. Consequently, Dr. Olive opined that Ivory was able to appreciate the wrongfulness of his actions at the time of the crime.

In support of his argument that Dr. Olive and the trial court were mistaken, Ivory points out that "[t]he mental health professionals who examined Mr. Ivory agreed that he suffered from some level of mental retardation." *Appellant's Brief* at 8. In light of this, he claims it is just as likely "that he wandered onto the property without any intent to commit any crime and then simply grabbed some items that he saw and took them. He may or may not have even understood that the items belonged to someone and that he shouldn't take them." *Id.* at 10. Indeed, he claims "there is no evidence that he entered intending to steal any items" from the Neiditches. *Id.* To the contrary, Dr. Olive's professional opinion was that Ivory did appreciate the wrongfulness of his conduct at the time of the offense. As described by Officer Reierson, Ivory's demeanor and interaction with law enforcement officers at the scene did not reflect incapacity. In fact, the officer testified that Ivory responded lucidly to the questions posed to him at the time. The bottom line is that this was an issue of fact to be resolved by the trial court, and one to which we owe "substantial" deference. *Galloway v. State*, 938 N.E.2d at 709. Mindful of our standard of review, we cannot say that the evidence is without conflict and leads only to the conclusion that Ivory was insane and thus unable to form the requisite mens rea when the crime was committed. *See Galloway v. State*, 938 N.E.2d 699.

Judgment affirmed.

7

VAIDIK, C.J., and MAY, J., concur.