

FILED

Apr 19 2024, 9:07 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court



I N  T H E

# Court of Appeals of Indiana

Brian Randy Van Auken,

*Appellant-Defendant*

v.

State of Indiana,

*Appellee-Plaintiff*

---

April 19, 2024

Court of Appeals Case No.
23A-CR-1573

Appeal from the Wells Circuit Court

The Honorable Kenton W. Kiracofe, Judge

Trial Court Cause No.
90C01-2202-F1-2

---

**Opinion by Judge Bradford**
Chief Judge Altice and Judge Felix concur.

**Bradford, Judge.**

## Case Summary

Brian Van Auken appeals following his convictions for three counts of Level 1 felony child molesting, Level 3 felony promotion of sexual trafficking of a younger child, six counts of Level 4 felony child solicitation, Level 4 felony sexual misconduct with a minor, and five counts of Level 5 felony child solicitation. He contends that the trial court abused its discretion in admitting certain evidence, the evidence is insufficient to sustain his convictions, and his aggregate sixty-nine-year sentence is inappropriate. We affirm.

## Facts and Procedural History

In December of 2020, forty-year-old Van Auken met thirteen-year-old D.M.[1] on Grindr, an adult dating website. In an attempt to circumvent the age restrictions on Grindr, D.M. had indicated in his Grindr profile that he was nineteen years old. After communicating on Grindr, Van Auken and D.M. began communicating on Snapchat.[2] Between December 20 and 26, 2020, Van Auken and D.M. engaged in sexually explicit conversations over Snapchat, during which Van Auken electronically solicited oral and anal sex from D.M. and offered to take D.M. to a friend's house where D.M. could engage in oral

---

[1] D.M. was born on February 25, 2007.

[2] Snapchat is an internet-based instant messaging and social networking application commonly downloaded onto cellular telephones.

sex with more than one person at a time. In exchange for sexual acts, Van Auken offered to supply D.M. with marijuana.

[3] On December 26, 2020, Van Auken and D.M. met in person for the first time and engaged in either oral or anal sex. Afterwards, in a series of messages sent around 5:00 a.m. on December 31, 2020, the following Snapchat exchange occurred between Van Auken and D.M.:

> [Van Auken]: How old are you for real?? .. just put the second digit, I wanna know just cause lol[3]
> [Van Auken]: Not gonna change anything lol
> [Van Auken]: 5?
> [D.M.]: I am 17

Ex. Vol. pp. 28–29. Van Auken and D.M. met in person "five to six times" and would engage in oral or anal sex while they were together. Tr. Vol. III p. 162.

[4] While on patrol at approximately 1:30 a.m. on July 18, 2021, Bluffton Police Officer Bradley Carlson encountered a black BMW that was "weaving within its lane" of travel. Tr. Vol. III p. 23. Officer Carlson initiated a traffic stop after he had observed the vehicle cross the fog line, "leaving its lane of travel." Tr. Vol. III p. 23. Officer Carlson approached the vehicle and made contact with the driver, who was later identified as D.M., and the front seat passenger, who was later identified as Van Auken. When he asked D.M. and Van Auken what they were doing, Van Auken told Officer Carlson that he was "letting [D.M.]

---

[3] An emoji depicting a smiling face with its tongue sticking out is omitted after the "lol."

drive" despite knowing that D.M. did not have a driver's license. Tr. Vol. III p. 26. While he was speaking with Officer Carlson, Van Auken appeared to be "extremely nervous" and Officer Carlson "noticed, immediately, that he was sweating profusely" and "was breathing heavily." Tr. Vol. III p. 27. Given Van Auken's demeanor and the fact that Van Auken had traveled from Fort Wayne to see D.M. in Bluffton, Officer Carlson became concerned that D.M. was a "child victim of some sort." Tr. Vol. III p. 27. He then requested assistance and Officer Benjamin Griner arrived on scene a short time later.

[5] Officer Carlson spoke privately with D.M. D.M. stated that he was "just learning how to drive" and that Van Auken, whom he knew as "Jax," was "friends with his mom." Tr. Vol. III pp. 28, 29. D.M. denied that anything sexual was "going on" and provided Officer Carlson with his parents' names and a phone number, which turned out to be incorrect, for his mother. Tr. Vol. III p. 28. Officer Carlson observed that D.M. was "just a young kid" who did not "appear old for his age." Tr. Vol. III p. 28. Likewise, Officer Griner observed that D.M. had appeared to be "a middle schooler" and "consistent with a [fourteen]-year-old." Tr. Vol. III p. 63.

[6] Officer Carlson then spoke with Van Auken. Van Auken told Officer Carlson that he had met D.M. online and that he had planned to let D.M. drive around "a little bit" before taking him home. Tr. Vol. III p. 29. Van Auken claimed that he "couldn't remember" what website he had met D.M. on. Van Auken described the nature of his relationship with D.M. as "friends" and that they

had "connected" and "morally support[ed] each other." Tr. Vol. III p. 30. Van Auken also indicated that he did not know D.M.'s family.

[7] Officer Carlson placed Van Auken under arrest for contributing to the delinquency of a minor.[4] Officer Carlson searched the black BMW and seized Van Auken's cellular telephone. During his search of the BMW, Officer Carlson located a box of condoms and "an open bottle of KY brand jelly" lubricant. Tr. Vol. III p. 34. Officer Carlson turned Van Auken's cellular telephone over to Detective Clifford Thomas who, on July 19, 2021, applied for, and received, a warrant to search Van Auken's cellular telephone.

[8] The subsequent search of Van Auken's cellular telephone revealed 939 Snapchat messages between Van Auken and D.M. for the period between December 20, 2020, and the date of the traffic stop on July 18, 2021. The messages made it obvious that Van Auken and D.M. had been engaged in a sexual relationship and that they had met on numerous occasions to engage in sexual contact. After reviewing the Snapchat conversations, Detective Thomas spoke with D.M. and his parents. D.M. admitted that he had met with Van Auken on several occasions and that he had engaged in oral and anal sex with him.

---

[4] D.M. was also detained and was transported to the Bluffton Police Department for driving without ever receiving a license.

[9] On February 11, 2022, the State charged Van Auken with three counts of Level 1 felony child molesting, Level 3 felony promotion of sexual trafficking of a younger child, six counts of Level 4 felony child solicitation, Level 4 felony sexual misconduct with a minor, and five counts of Level 5 felony child solicitation. On February 23, 2023, Van Auken moved to suppress the evidence recovered from his cellular telephone, *i.e.*, the Snapchat messages. Following a hearing, the trial court denied Van Auken's motion.

[10] At trial, the deputy prosecutor and Van Auken's counsel submitted a signed stipulation agreement, in which they stipulated as follows:

> COMES NOW, the State [of] Indiana, by its Deputy Prosecuting Attorney, and the Defendant by Counsel, and submits the following stipulated agreement:
>
> 1. The 115 pages of Snapchat communication between JAX_MEHOFF100 and TAIOOX13 was recovered from Brian VanAuken's cellphone and is an accurate representation of the Snapchat communication between Defendant and [D.M.].
>
> 2. Agree that these communications are admissible at trial.

Appellant's App. Vol. II p. 210. After the parties had submitted their stipulation, Van Auken's counsel indicated that she agreed that the messages were admissible and had "[n]o issues" with their publication. Tr. Vol. III p. 73. Moreover, when the messages were admitted into evidence at trial, Van Auken's counsel explicitly stated that she had "[n]o objection." Tr. Vol. III p. 83.

Van Auken testified in his own defense. Van Auken admitted that he had engaged in oral and anal sex with D.M. and had solicited such acts from him. Van Auken also presented evidence and argument which was aimed at proving his stated defense, *i.e.*, that he had reasonably believed that D.M. was older than sixteen. At the conclusion of trial, the jury found Van Auken guilty as charged. The trial court subsequently entered judgment of conviction and sentenced Van Auken to an aggregate sixty-nine-year sentence.

## Discussion and Decision

Van Auken contends that the trial court abused its discretion in admitting certain data recovered from a search of his cellular telephone, that the evidence is insufficient to sustain his convictions, and that his aggregate sixty-nine-year sentence is inappropriate.

### I. The Trial Court Did Not Abuse its Discretion in Admitting the Challenged Evidence

"The general admission of evidence at trial is a matter we leave to the discretion of the trial court." *Clark v. State*, 994 N.E.2d 252, 259–60 (Ind. 2013). "Trial courts have broad discretion to admit or exclude evidence, and our review is limited to whether the trial court abused that discretion." *Satterfield v. State*, 33 N.E.3d 344, 352 (Ind. 2015). "We consider all the facts and circumstances surrounding the trial court's decision to determine whether it is clearly against the logic and effect of what those facts and circumstances dictate." *Id.* (internal

quotation omitted). "And we may affirm a trial court's judgment on any theory supported by the evidence." *Id.* (internal quotation omitted).

[14] Van Auken claims that the evidence recovered from his cellular telephone, *i.e.*, the Snapchat messages exchanged between himself and D.M., should have been excluded from the evidence at trial because the underlying warrant for the search of his cellular telephone was defective. Specifically, Van Auken claims that police lacked probable cause to search his cellular telephone because the affidavit filed in support of the warrant "simply did not present facts, along with any inferences, which demonstrated a sufficient nexus between the suspected criminal activity … and the specific thing to be searched," *i.e.*, Van Auken's cellular telephone. Appellant's Br. p. 21. "[T]he ultimate ruling on the constitutionality of a search is a legal conclusion that we review *de novo*." *McIlquham v. State*, 10 N.E.3d 506, 511 (Ind. 2014) (emphasis in original, internal quotation omitted).

[15] Van Auken acknowledges that he did not object to the admission of the challenged evidence at trial, arguing on appeal that its admission resulted in fundamental error. "Fundamental error is an error that makes a fair trial impossible or constitutes clearly blatant violations of basic and elementary principles of due process presenting an undeniable and substantial potential for harm." *Clark v. State*, 915 N.E.2d 126, 131 (Ind. 2009). However, even assuming the search warrant was in some way defective or insufficient or the admission of the challenged evidence amounted to fundamental error, Van Auken is not entitled to relief because he invited the error.

[16]    The invited-error doctrine generally precludes a party from obtaining appellate relief for his own errors, *even if those errors were fundamental*. A party invites an error if it was part of a deliberate, well-informed trial strategy. This means there must be evidence of counsel's strategic maneuvering at trial to establish invited error. Mere neglect or the failure to object, standing alone, is simply not enough. And when there is no evidence of counsel's strategic maneuvering, we are reluctant to find invited error.

*Miller v. State*, 188 N.E.3d 871, 874–75 (Ind. 2022) (cleaned up, emphasis added). "[E]ven constitutional errors may be invited." *Brewington v. State*, 7 N.E.3d 946, 977 (Ind. 2014).

[17]    The record in this case clearly establishes that to the extent any error occurred, such error was invited by Van Auken. As is laid out above, at trial, the deputy prosecutor and Van Auken's counsel submitted a signed stipulation agreement, in which they stipulated as follows:

COMES NOW, the State [of] Indiana, by its Deputy Prosecuting Attorney, and the Defendant by Counsel, and submits the following stipulated agreement:

1.      The 115 pages of Snapchat communication between JAX_MEHOFF100 and TAIOOX13 was recovered from Brian VanAuken's cellphone and is an accurate representation of the Snapchat communication between Defendant and [D.M.].

2.      Agree that these communications are admissible at trial.

Appellant's App. Vol. II p. 210. After the parties had submitted their stipulation, Van Auken's counsel indicated that she agreed the messages were

admissible and had "[n]o issues" with their publication.  Tr. Vol. III p. 73.
Moreover, when the messages were admitted into evidence at trial, Van
Auken's counsel explicitly stated that she had "[n]o objection."  Tr. Vol. III p.
83.

[18]     In addition, Van Auken referred to the messages as part of a deliberate trial
strategy.  Van Auken's defense at trial was that he had reasonably believed that
D.M. had been seventeen years old.  In support of his defense, Van Auken
directed the jury to messages that he claimed supported his reasonable belief
that D.M. had been of consenting age.  Van Auken described the messages sent
by D.M. as "very direct and vulgar," and that nothing he said ever led him to
believe that D.M. was younger than his claimed age of seventeen.  Tr. Vol. III
p. 227.  In fact, when one witness failed to read some of the messages exactly as
written, Van Auken objected, arguing that the witness needed to "be a little
more thorough" and "has to read thoroughly because every sentence and every
letter matters."  Tr. Vol. III pp. 93, 94.  The trial court agreed that the witness
needed to accurately describe the messages to the jury.  In closing argument, the
defense again pointed to some of D.M.'s messages, arguing "[w]hat person
under the age of [sixteen] says that?  That's not a thing that any person would
expect to hear a person under the age of [sixteen] say; let alone someone who's
[thirteen] or [fourteen] in middle school.  It's unbelievable."  Tr. Vol. IV p. 68.
Van Auken described the language used by D.M. in their messages as

> the most foul language that no adult would expect a child of the
> age of [thirteen] or [fourteen] to use….  I invite you to look at the
> messages.  Look at what D.[M]. said.  The specific words that he

used that no one would expect to hear out of the mouth of a
[thirteen] or [fourteen]-year-old.

Tr. Vol. IV. p. 69.

[19] The record clearly establishes that Van Auken used the Snapchat messages to establish a defense by attempting to paint D.M. as a liar who had fooled him into believing that D.M. was of a consenting age. Van Auken, therefore, invited the alleged error as part of a deliberate, well-informed trial strategy. *See Miller*, 188 N.E.3d at 875. Given that constitutional errors can be invited, *see Brewington*, 7 N.E.3d at 977, even assuming that the underlying search warrant was in some way insufficient or defective, Van Auken is precluded from obtaining appellate relief. *See Miller*, 188 N.E.3d at 874–75.

## II.    The Evidence is Sufficient to Sustain Van Auken's Convictions

[20] Van Auken also contends that the evidence is insufficient to sustain his convictions, as the State failed to prove that he had knowingly committed the charged acts with an underage individual.

> When reviewing the sufficiency of the evidence to support a conviction, appellate courts must consider only the probative evidence and reasonable inferences supporting the verdict. It is the fact-finder's role, not that of appellate courts, to assess witness credibility and weigh the evidence to determine whether it is sufficient to support a conviction. To preserve this structure, when appellate courts are confronted with conflicting evidence, they must consider it most favorably to the trial court's ruling. Appellate courts affirm the conviction unless no reasonable fact-

> finder could find the elements of the crime proven beyond a reasonable doubt. It is therefore not necessary that the evidence overcome every reasonable hypothesis of innocence. The evidence is sufficient if an inference may reasonably be drawn from it to support the verdict.

*Drane v. State*, 867 N.E.2d 144, 146–47 (Ind. 2007) (cleaned up). Stated differently, in reviewing the sufficiency of the evidence, "we consider only the evidence and reasonable inferences most favorable to the convictions, neither reweighing evidence nor reassessing witness credibility" and "affirm the judgment unless no reasonable factfinder could find the defendant guilty." *Griffith v. State*, 59 N.E.3d 947, 958 (Ind. 2016).

[21] Van Auken was convicted of three counts of Level 1 felony child molesting (Counts I, IV, and VII), Level 3 felony promotion of sexual trafficking of a younger child (Count III), six counts of Level 4 felony child solicitation (Counts II, VI, VIII, IX, XI, XII), Level 4 felony sexual misconduct with a minor (Count X) and five counts of Level 5 felony child solicitation (Counts V, XIII, XIV, XV, XVI).

> A person who, with a child under fourteen (14) years of age, knowingly or intentionally performs or submits to sexual intercourse or other sexual conduct … commits child molesting, a Level 3 felony. However, the offense is a Level 1 felony if: (1) it is committed by a person at least twenty-one (21) years of age.

Ind. Code § 35-42-4-3(a).

> A person who knowingly or intentionally recruits, entices, harbors, or transports a child less than eighteen (18) years of age

with the intent of causing the child to engage in … a performance or incident that includes sexual conduct in violation of [child exploitation laws] … commits promotion of child sexual trafficking, a Level 3 felony.

Ind. Code § 35-42-3.5-1.2(a).

A person at least eighteen (18) years of age who knowingly or intentionally performs or submits to sexual intercourse or other sexual conduct … with a child less than sixteen (16) years of age, commits sexual misconduct with a minor, a Level 5 felony. However, the offense is:  (1) a Level 4 felony if it is committed by a person at least twenty-one (21) years of age[.]

Ind. Code § 35-42-4-9(a).

(b) A person eighteen (18) years of age or older who knowingly or intentionally solicits a child under fourteen (14) years of age, or an individual the person believes to be a child under fourteen (14) years of age, to engage in sexual intercourse, other sexual conduct …, or any fondling or touching intended to arouse or satisfy the sexual desires of either the child or the older person, commits child solicitation, a Level 5 felony.  However, the offense is a Level 4 felony if the person solicits the child or individual the person believes to be a child under fourteen (14) years of age to engage in sexual intercourse or other sexual conduct (as defined in IC 35-31.5-2-221.5) and:
      (1) commits the offense by using a computer network (as defined in IC 35-43-2-3(a)) and travels to meet the child or individual the person believes to be a child; or
      (2) has a previous unrelated conviction for committing an offense under this section.
(c) A person at least twenty-one (21) years of age who knowingly or intentionally solicits a child at least fourteen (14) years of age

but less than sixteen (16) years of age, or an individual the person believes to be a child at least fourteen (14) years of age but less than sixteen (16) years of age, to engage in sexual intercourse, other sexual conduct …, or any fondling or touching intended to arouse or satisfy the sexual desires of either the child or the older person, commits child solicitation, a Level 5 felony.

Ind. Code § 35-42-4-6. "A person engages in conduct 'intentionally' if, when he engages in the conduct, it is his conscious objective to do so." Ind. Code § 35-41-2-2(a). "A person engages in conduct 'knowingly' if, when he engages in the conduct, he is aware of a high probability that he is doing so." Ind. Code § 35-41-2-2(b).

[22] In challenging the sufficiency of the evidence to sustain his convictions, Van Auken argues

> All [sixteen] counts for which Van Auken was convicted contain an element regarding the age of the victim either "under [fourteen]" (see Counts I, II, IV, V, VI, VII, VIII, XIII, XIV, XV); "at least [fourteen] but under [sixteen]" (see Counts IX, XI, XII, and XVI); and "less than [sixteen]" (see Counts III and X). Van Auken admitted that all of the acts occurred on the various dates. However, his defense for each count was that he reasonably believed that D.M. was [sixteen] years of age or older (i.e., [seventeen]).

Appellant's Br. p. 26.

[23] Both Level 1 child molestation and Level 4 felony sexual misconduct with a minor provide a defense to prosecution if the accused "reasonably believed the child was sixteen (16) years of age or older at the time of the conduct." Ind.

Code §§ 35-42-4-3(d), 35-42-4-9(c). "Such a defense admits all the elements of the crime but proves circumstances that excuse the defendant from culpability." *Weaver v. State*, 845 N.E.2d 1066, 1069 (Ind. Ct. App. 2006), *trans. denied*. The "mistaken belief" defense "does not negate an element of the crime; rather, if believed, the defense reduces [the defendant's] culpability for acts he committed." *Id.* "Therefore, the burden to prove the defense may properly be placed on the defendant." *Id.* Neither the promotion of sexual trafficking nor child solicitation statutes, however, provide such a defense. As such, even if Van Auken's belief that D.M. had been over the age of sixteen was reasonable, such reasonable belief would not negate his culpability for his promotion of sexual trafficking or child solicitation convictions.

[24] In support of his defense at trial and his argument on appeal, Van Auken points to evidence in the record which he claims proves that his belief that D.M. was over sixteen was reasonable. Van Auken asserts that D.M. had listed that he was nineteen in his Grindr profile, had later told Van Auken that he was seventeen, and used sexually explicit language in the messages that he had sent to Van Auken on Snapchat. Van Auken also asserts that the fact that Officer Carlson had asked D.M. for his driver's license when he first encountered D.M. and Van Auken suggests "that it wasn't obvious to [Officer] Carlson that D.M. was too young to have a license or permit." Appellant's Br. p. 29.

[25] While the evidence cited by Van Auken may have suggested that he had reasonably believed that D.M. had been over the age of sixteen, the jury, acting as the trier-of-fact, was not required to credit Van Auken's evidence and

assertions. *See Thompson v. State*, 804 N.E.2d 1146, 1149 (Ind. 2004) ("As a general rule, factfinders are not required to believe a witness's testimony even when it is uncontradicted."). Moreover, other evidence in the record is sufficient to prove that Van Auken's claimed belief was unreasonable as Van Auken knew, or, at the very least, should have known, that D.M. was under the age of sixteen.

[26] D.M. testified that he was born on February 25, 2007. In December of 2020 through February 24, 2021, he was therefore thirteen years old and turned fourteen on February 25, 2021. Officer Carlson observed that D.M. "was just a young kid" who did not appear old for his age. Tr. Vol. III p. 28. Likewise, Officer Griner testified that D.M. had appeared to be "a middle schooler" and "he appeared consistent with a [fourteen]-year-old." Tr. Vol. III p. 63.

[27] When Officer Carlson first encountered D.M. and Van Auken, Van Auken "appeared extremely nervous" and "was sweating profusely … and breathing heavily." Tr. Vol. III p. 27. Consistent with Van Auken's extremely nervous demeanor, Officer Carlson indicated that Van Auken had not acted surprised when he allegedly first learned that D.M. was only fourteen years old. When speaking to Officer Carlson, at one point, Van Auken referred to D.M. as "the kid." Tr. Vol. III p. 31. He also "agreed" with Officer Carlson that he had known that the reason D.M. did not have a driver's license was that D.M. was "too young to have one." Tr. Vol. III p. 32. Prior to being arrested, Van Auken did not accuse D.M. of lying to him, but rather "didn't say anything" to D.M. at all. Tr. Vol. III p. 192.

[28] D.M. and Van Auken each gave a different story to Officer Carlson regarding the nature of their relationship with the other, with Van Auken claiming that he and D.M. had met online but that "he couldn't remember" what site. Tr. Vol. III p. 29. Van Auken claimed that he and D.M. "were friends and they emotionally connected," and "morally supported each other" by giving the other "somebody to talk to." Tr. Vol. III p. 30. D.M., on the other hand claimed that Van Auken was "friends with his mom" who was teaching him how to drive. Tr. Vol. III p. 28.

[29] In addition, Van Auken's Snapchat conversations with D.M. suggested that Van Auken knew, or at least suspected, that D.M. was younger than what he had originally claimed to be. In a series of messages sent around 5:00 a.m. on December 31, 2020, the following Snapchat exchange occurred between Van Auken and D.M.:

> [Van Auken]: How old are you for real?? .. just put the second digit, I wanna know just cause lol[5]
> [Van Auken]: Not gonna change anything lol
> [Van Auken]: 5?
> [D.M.]: I am 17

Ex. Vol. pp. 28–29. We agree with the State that this Snapchat exchange "make[s it] apparent" that Van Auken "believed that D.M. was a child and was at most [fifteen] years old." Appellee's Br. p. 38. We further agree with the

---

[5] As was the case above, an emoji depicting a smiling face with its tongue sticking out is omitted after the "lol."

State that "the jury had sufficient evidence before it from which to conclude that Van Auken did not reasonably believe that D.M. was [sixteen] years old or older when he engaged in other sexual conduct with him." Appellee's Br. p. 38. Furthermore, Van Auken admits that each of his sexual encounters with D.M. occurred "in [his] car, at night, in a secluded area." Appellant's Br. p. 29. The record establishes that Van Auken was cautious about being seen with D.M. and, when stopped by police, lied about the nature of his relationship with D.M.

[30] Again, Van Auken admits that the charged conduct occurred and only argues on appeal that the evidence is insufficient to prove the age component of the charged offenses because he had reasonably believed that D.M. was over the age of sixteen when the charged conduct occurred. Van Auken presented this defense at trial, but the jury did not credit Van Auken's claim that he had reasonably believed that D.M. was over sixteen years old at all times when the charged conduct occurred. Likewise, the evidence establishes that D.M. was thirteen years old when Van Auken committed all of the charged offenses occurring before February 25, 2021, and was fourteen years old when Van Auken committed all of the charged offenses occurring after February 25, 2021. The evidence is therefore sufficient to sustain Van Auken's convictions. Van Auken's claim to the contrary amounts to nothing more than an invitation for this court to reweigh the evidence, which we will not do. *See Griffith*, 59 N.E.3d at 958.

## III.  Van Auken's Sentence is Not Inappropriate

[31]  Van Auken last contends that his aggregate sixty-nine-year sentence is inappropriate.  Indiana Appellate Rule 7(B) provides that we "may revise a sentence authorized by statute if, after due consideration of the trial court's decision, the Court finds that the sentence is inappropriate in light of the nature of the offense and the character of the offender."  In analyzing such claims, we "concentrate less on comparing the facts of [the case at issue] to others, whether real or hypothetical, and more on focusing on the nature, extent, and depravity of the offense for which the defendant is being sentenced, and what it reveals about the defendant's character."  *Paul v. State*, 888 N.E.2d 818, 825 (Ind. Ct. App. 2008) (internal quotation omitted), *trans. denied*.  "The defendant bears the burden of persuading us [that his] sentence is inappropriate."  *Sanchez v. State*, 891 N.E.2d 174, 176 (Ind. Ct. App. 2008).

[32]  Again, Van Auken was convicted of three Level 1 felonies, one Level 3 felony, seven Level 4 felonies, and five Level 5 felonies.  "[A] person who commits a Level 1 felony … shall be imprisoned for a fixed term of between twenty (20) and forty (40) years, with the advisory sentence being thirty (30) years."  Ind. Code § 35-50-2-4(b).  "A person who commits a Level 3 felony … shall be imprisoned for a fixed term of between three (3) and sixteen (16) years, with the advisory sentence being nine (9) years."  Ind. Code § 35-50-2-5(b).  "A person who commits a Level 4 felony shall be imprisoned for a fixed term of between two (2) and twelve (12) years, with the advisory sentence being six (6) years."  Ind. Code § 35-50-2-5.5.  "A person who commits a Level 5 felony … shall be

imprisoned for a fixed term of between one (1) and six (6) years, with the advisory sentence being three (3) years." Ind. Code § 35-50-2-6(b).

[33] The trial court sentenced Van Auken as follows:

1. **Count Group 1, Count I as the main count**:
   a) As to Count I, Child Molesting, a Level 1 Felony: twenty (20) years.
   b) As to Count II, Child Solicitation, a Level 4 Felony: six (6) years.
   c) As to Count III, Promotion of Sexual Trafficking of a Younger Child, a Level 3 Felony: nine (9) years.
   d) Counts I, II, and III, shall be served concurrently with each other.

2. **Count Group 2, Count IV as the main count**:
   a) As to Count IV, Child Molesting, a Level 1 Felony: twenty (20) years.
   b) As to Count V, Child Solicitation, a Level 5 Felony: three (3) years.
   c) As to Count XIII, Child Solicitation, a Level 5 Felony: three (3) years.
   d) Counts IV, V, and XIII, shall be served concurrently with each other.

3. **Count Group 3, Count VII as the main count**:
   a) As to Count VII, Child Molesting, a Level 1 Felony: twenty (20) years.
   b) As to Count VI, Child Solicitation, a Level 4 Felony: six (6) years.
   c) As to Count VIII, Child Solicitation, a Level 4 Felony: six (6) years.
   d) As to Count XIV, Child Solicitation, a Level 5 Felony: three (3) years[.]

e)      Counts VII, VI, VIII and XIV, shall be served concurrently with each other.

4.      **Count Group 4, Count X as the main count**:
a)      As to Count X, Sexual Misconduct with a Minor, a Level 4 Felony:  six (6) years.
b)      As to Count IX, Child Solicitation, a Level 4 Felony:  six (6) years.
c)      As to Count XI, Child Solicitation, a Level 4 Felony:  six (6) years.
d)      As to Count XV, Child Solicitation, a Level 5 Felony:  three (3) years.
e)      Counts X, IX, XI, and XV, shall be served concurrently with each other.

5.      Count XII, Child Solicitation, a Level 4 Felony:  two (2) years.

6.      Count XVI, Child Solicitation, a Level 5 Felony:  one (1) year.

7.      The sentences imposed in Count Groups 1, 2, 3, 4, Count XII, and Count XVI, shall be served consecutively, for an aggregate executed sentence of sixty-nine (69) years to the Indiana Department of Correction.

Appellant's App. Vol. III pp. 125–26 (emphases in original).  Thus, for each of Van Auken's Level 1 felony convictions, the trial court imposed a minimum sentence; for the Level 3 felony conviction, an advisory sentence; an advisory sentence for all but one of the Level 4 felony convictions and a minimum sentence for the remaining Level 4 felony conviction; and an advisory sentence

for all but one of the Level 5 felony convictions and a minimum sentence for the remaining Level 5 felony conviction.

[34] We agree with Van Auken that "[t]he nature of the offenses are [sic] found in the details and circumstances of the commission of the offenses and a defendant's participation." Appellant's Br. p. 33. In this case, the details and circumstances of Van Auken's crimes are that he repeatedly electronically solicited sexual encounters with D.M. and engaged in repeated in-person sexual encounters with D.M. over the course of seven months. Although D.M. had claimed to be nineteen in his Grindr profile, Van Auken had doubts about D.M.'s age after their first in-person encounter. D.M. admitted that he was not nineteen but claimed to be seventeen. The evidence supports the inference, however, that Van Auken knew or at least suspected that D.M. was younger than seventeen, but nonetheless continued to electronically solicit D.M. to engage in sexual activities and met up with D.M. in-person to engage in sexual conduct. In arguing that his sentence is inappropriate, Van Auken asserts that "perhaps" he "was willingly ignorant and he should have better scrutinized the situation and ended the relationship at that point. Unfortunately, he did not." Appellant's Br. p. 34.

[35] Van Auken admits that he repeatedly solicited D.M. electronically, engaging in sexually explicit conversations over Snapchat and soliciting D.M. to perform oral sex on him and to submit to anal sex in exchange for marijuana. Van Auken also admits that he had solicited D.M. to engage in sexual conduct with

some of his friends. These solicitations occurred numerous times but are evidenced by the following Snapchat conversation:

> [Van Auken]: Was gonna see if you wanted to go to one of my friends [sic] houses in roanoake
> [Van Auken]: They're gay
> ****
> [D.M.]: Dang why not?
> [Van Auken]: You wanna go? Or you gotta be home
> ****
> [Van Auken]: Don't want you getting in trouble on your side tho
> [D.M.]: How far is were [sic] they live
> [Van Auken]: It's too far so scratch that, I need my [c***] sucked really good you down?
> ****
> [D.M.]: So are we going to your friends [sic] house?
> ****
> [Van Auken]: Why you wanna suck two or three [c***s] at once?
> ****
> [D.M.]: Yeah I want to
> [Van Auken]: No not tonight but I'll set that up for you …
> [D.M.]: Yeah tell you [sic] friends to hit me up
> [Van Auken]: So sup you want daddy's [c***]
> [D.M.]: Yeah
> [Van Auken]: Mmm good I want that mouth
> [Van Auken]: Got one spliff left

Ex. Vol. pp. 11–14. Van Auken and D.M. also had multiple in-person sexual encounters, which Van Auken admits occurred "in [his] car, at night, in a secluded area." Appellant's Br. p. 29.

When stopped by police, Van Auken lied about the nature of his relationship with D.M. At trial, Van Auken attempted to shift the blame to D.M., claiming that D.M. had fooled him and that "it's not his fault that some kid chose to lie." Tr. Vol. IV p. 67. The nature of Van Auken's offenses is undoubtedly serious and troubling as he repeatedly victimized a child, attempted to traffic him to other people, lied to police, and blamed the victim in an attempt to shield himself from responsibility.

As for Van Auken's character, he claims that other than a few misdemeanor convictions, he "had led a law[-]abiding life, had a good home life growing up, and had a good work history. He is a high school graduate and completed some college classes at IPFW." Appellant's Br. p. 35. Van Auken asserts that "[t]here is nothing in [his] past that would suggest the kind of behavior for which he was convicted" and claims that his mother's suicide in 2020 "set [him] into a tailspin. Everything fell apart and he increased his alcohol and marijuana use." Appellant's Br. p. 35 (internal record quotation omitted).

Van Auken has prior convictions for public intoxication,[6] Class B misdemeanor reckless driving, and Class B misdemeanor possession of marijuana. He has been arrested and charged with criminal activity on at least two other occasions and has violated the terms of probation on at least one occasion. While Van Auken's criminal history may be classified as relatively minor, "[e]ven a minor

---

[6] The class of misdemeanor for this offense is unclear from the record.

criminal history is a poor reflection of a defendant's character." *Prince v. State*, 148 N.E.3d 1171, 1174 (Ind. Ct. App. 2020).

[39] Van Auken chose to continue his relationship with D.M. *after* he had become aware, or at the very least suspicious, that D.M. was an underage child. Van Auken admits that he was "perhaps … willingly ignorant" and "should have better scrutinized the situation." Appellant's Br. p. 34. However, Van Auken has attempted to shift the blame for his actions by claiming that D.M. had fooled him and it was not his fault that D.M. had lied about his age. We believe it reflects poorly on Van Auken's character that he has attempted to shift the blame for his decisions and actions to D.M.

[40] Furthermore, to the extent that Van Auken argues that he "did not force or threaten D.M. during the times they were together and that throughout their relationship D.M. was a willing participant," Appellant's Br. p. 34, the lack of force or threats does not mitigate Van Auken's responsibility for his actions or justify a lesser sentence. *See Neale v. State*, 826 N.E.2d 635, 638 (Ind. 2005) ("[A]bsence of physical harm is not an automatic mitigating circumstance such that it would require a lesser sentence than would otherwise be imposed."). Van Auken has failed to convince us that his aggregate sixty-nine-year sentence is inappropriate.

[41] The judgment of the trial court is affirmed.

Altice, C.J., and Felix, J., concur.

ATTORNEY FOR APPELLANT

Gregory L. Fumarolo
Fort Wayne, Indiana


ATTORNEYS FOR APPELLEE

Theodore E. Rokita
Attorney General of Indiana

Courtney L. Staton
Deputy Attorney General
Indianapolis, Indiana